* Editor's Note: The opinion of the Court of Criminal Appeals of Alabama in Cade v. State, published in the advance sheets at this citation (364 So.2d 1190), was withdrawn from this volume because rehearing is pending.
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1192 
This appeal is from a judgment granting motions for summary judgment in favor of the bank and two individuals, Barbara Ingalls Shook and Elesabeth Ingalls Gillet, as cotrustees, on cross-claims and counterclaims filed by the appellants, who claim the right to share in the distribution of income from six trusts as descendants (grandchildren) of Robert I. Ingalls, Jr.
The trusts, designated Ingalls Trusts B, C, D, E, F, and G, were created by members of the Ingalls family using primarily Ingalls Iron Works Company stock as trust corpus. Trusts B, E, and F were created by Robert I. Ingalls, Sr., Trusts C and G by his wife Ellen G. Ingalls, and Trust D by his only child, Robert I. Ingalls, Jr. Trust G was purportedly terminated in 1973. First Alabama Bank of Birmingham is trustee of Trust D and co-trustee of the other four trusts. Elesabeth Gillet is co-trustee of Trusts B, C, E, and F, and Barbara Shook is co-trustee of Trusts B, C, and F. These trusts have been the subject of much litigation and have been before this Court on at least two prior occasions. Ex parte Ingalls, 266 Ala. 45,93 So.2d 753 (1957); Ingalls v. Ingalls, 256 Ala. 321,54 So.2d 296 (1951).
In this most recent action, First Alabama Bank of Birmingham filed a petition for partial settlement as trustee or co-trustee of the trusts (except Trust G). Parties to the proceeding included Barbara Ingalls Shook and Elesabeth Ingalls Gillet (only children of Robert I. Ingalls, Jr.), Robert I.M. Boykin and Samuel M. Boykin, III (only children of Elesabeth Gillet), Elesabeth R. Shook and Ellen G. Shook (only children of Barbara Shook), and M. Wayne Wheeler (guardian ad litem for unborn descendants of Robert I. Ingalls, Sr.). The Bank also filed a "Special Proceeding" seeking approval of a written agreement between the Bank, Ingalls Iron Works Company, and others.
The Boykins filed counterclaims against the Bank and cross-claims against their mother, Elesabeth Gillet, and aunt, Barbara Shook. The Shooks filed similar cross-claims and counterclaims. These claimants, who are the only grandchildren of Robert I. Ingalls, Jr., seek in the aggregate approximately $3 million, alleging that the Bank, Mrs. Gillet, and Mrs. Shook, as co-trustees, wrongfully distributed the entire income of the six trusts to Mrs. Gillet and Mrs. Shook. The grandchildren assert that they have a present right to the income and that each grandchild is entitled to a one-third share of the amount which has already been distributed to his or her mother, in effect, a per capita distribution.
The co-trustees filed motions to dismiss or motions for summary judgment on the cross-claims and counterclaims. The trial judge treated the motions to dismiss as motions for summary judgment, considering matters outside the pleadings, e.g., two prior cases involving the same trusts, the trust instruments themselves, and a supporting affidavit. The grandchildren filed no affidavits in opposition to summary judgment. The trial court granted the motions for summary judgment and, expressly determining under Rule 54 (b) that there was no just reason for delay, entered final judgment against the grandchildren. They, along with the guardian ad litem for unborn descendants appeal, with the three co-trustees and Ingalls Iron Works Company as appellees.
The grandchildren challenge the propriety of granting summary judgment in this case. They contend that the question of the settlors' intent as expressed in the trust provisions is a disputed question of fact.
Summary judgment is, of course, not properly granted unless there are no genuine issues of material fact and the *Page 1194 
application of law to the undisputed facts is correct. Gurleyv. Bank of Huntsville, 349 So.2d 43 (Ala. 1977).
The terms of the trusts as written are not disputed. The identity of the individual parties as descendants of Robert Ingalls, Jr., is uncontradicted. What should prevent the grant of summary judgment, the grandchildren contend, is that the trusts are ambiguous, presenting a disputed question of fact as to the settlors' intent. The grandchildren allege that language in the preambles and in certain provisions of the trusts reveals the intention to allow all living descendants of Robert Ingalls, Jr., to share in the distribution of trust income, as opposed to the trial court's finding that the trust provisions mandate a per stirpes distribution with Mrs. Shook and Mrs. Gillet as presently the sole beneficiaries entitled to income.
The construction of a written document is a function of the court. Smith v. Blinn, 221 Ala. 24, 127 So. 155 (1929). If the document is unambiguous, its construction and legal effect is a question of law which may be decided, under appropriate circumstances, by summary judgment. See Bible Baptist Church v.Stone, 55 Ala. App. 411, 316 So.2d 340 (Civ.App. 1975). Moreover, only when a trust term is ambiguous may there be resort to extrinsic evidence. Whitfield v. Matthews,334 So.2d 876 (Ala. 1976).
The pertinent portions of the trusts alleged to be ambiguous are as follows:
 Trust B
"That for and in consideration of the sum of One Dollar and other good and valuable considerations by the Grantor received, and for the sole purpose of providing his granddaughters, ELESABETH RIDGELY INGALLS and BARBARA GREGG INGALLS, and any other grandchildren or descendants who may be hereafter born, with an income, so that they may be assured of some degree of financial independence, the Grantor has transferred and assigned, and by these presents does transfer and assign unto the Trustees the property described in `Exhibit A' hereto attached and made a part hereof by reference; as well as any other items of property which hereafter may be granted, conveyed, assigned, transferred and delivered unto said Trustees under the terms hereof;
"TO HAVE AND TO HOLD the same unto the said Trustees, their successors and assigns, but in trust nevertheless, for the uses and purposes, upon the terms and conditions and with the powers and duties hereinafter stated."
* * * * * *
"(b) The Trustees shall hold said trust estate in trust for the use and benefit of such of the descendants of Grantor's son, ROBERT I. INGALLS, JR., including Grantor's granddaughters, Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls, as may from time to time during the duration of the trust be living, in equal shares per stirpes. Until each such descendant shall attain the age of twenty-one years, the Trustees shall use and apply for his or her support, education, expenses of travel, and comfort, such part of his or her share of the net income from said estate and of the principal thereof as the Trustees deem necessary or desirable for said purposes . . . From and after the time when any such beneficiary shall attain the age of twenty-one years, the Trustees shall transfer and pay over to such beneficiary all of his proportionate share of the entire net income from said trust estate and also such additional sum or sums out of the principal of said trust estate as the Trustees may in the absolute exercise of their discretion deem necessary or desirable from time to time for his or her proper support, education, expenses of travel, and comfort.
"(c) . . . In any event that any principal distribution is made to any beneficiary under the foregoing provisions of the within Section (c) hereof, the Trustees shall at the same time set apart for the benefit of all other beneficiaries then sharing in the benefits of said trust estate, in equal shares, per stirpes, other property constituting a *Page 1195 
part of the principal of said trust estate equivalent in value for each beneficiary per stirpes to the value of the property so distributed, and the Trustees shall thereafter hold such other property so set apart for each such other beneficiary in trust for the benefit of such other beneficiary as provided in Section (d) hereof. It is recognized that because of the different ages of beneficiaries, of the probable fluctuations in the values of property, and of the possible birth of other beneficiaries after distributions have been made hereunder, inequalities among beneficiaries hereunder may result, and there is consequently vested in the trustees hereunder full power and authority in the absolute exercise of their discretion to equalize or adjust as between beneficiaries differences as to income or as to principal growing out of prior distributions or growing out of changes in valuation of properties constituting said trust estate or growing out of the later birth of beneficiaries, so as to provide substantially equal benefits throughout the duration of the trust to all beneficiaries and their descendants per stirpes."
"(d) . . . Upon the termination of the trust, the Trustees shall transfer and pay over the property then constituting said trust estate to such of the descendants of grantor's son, Robert I. Ingalls, Jr., as may then be living in equal shares per stirpes. . . ."
 Trusts C and D
Same as Trust B, with some minor differences not material to the issues.
 Trust E
"That having gone through the period since the first world war and having witnessed many accumulations of years of effort swept away, and desiring to see his descendants safely and adequately provided for against the possibility of such a catastrophe, and having recently entered upon the new and hazardous business of shipbuilding, the future of which is not certain and the risks of which are rapidly increasing the dangers to the estate he has already built, and desiring to establish now a backlog fund for the protection of his descendants against the hazards of the time and their own youth and inexperience, the Grantor has transferred and assigned, and by these presents does transfer and assign, unto the Trustees the property described in EXHIBIT `A' hereto attached and made a part hereof by reference, as well as any other items of property which hereafter may be granted, conveyed, assigned, transferred and delivered unto said Trustees under the terms hereof;
"TO HAVE AND TO HOLD the same unto the said ELLEN G. INGALLS, ROBERT I. INGALLS, JR. and THE FIRST NATIONAL BANK OF BIRMINGHAM (and to such successor corporation having trust powers as shall succeed to the business of said bank by purchase, merger, consolidation, or change of charter or name), as Trustees, in trust nevertheless for the uses and purposes, upon the terms and conditions and with the powers and duties hereinafter stated."
* * * * * *
"(b) The Trustees shall hold said trust estate in trust for the use and benefit of ELISABETH RIDGELY INGALLS and BARBARA GREGG INGALLS, both children of the Grantor's son, Robert I. Ingalls, Jr., and of such of any other descendants of said Robert I. Ingalls, Jr. as may, from time to time during the continuance of the trust be living. During the continuance of the trust all income from said trust shall be added to and become principal. From the principal so augmented the Trustees shall from time to time pay to or for the use and benefit of each of said children and descendants of said Robert I. Ingalls, Jr., such sum or sums as the Trustees may from time to time deem necessary for her or his proper support, education and comfort. . . ."
"It is intended that the Trustees shall so far as is practicable exercise their discretion in making distributions hereunder so as to provide approximately equal treatment per stirpes for each child of the Grantor's son, *Page 1196 
Robert I. Ingalls, Jr., and for the descendants of any deceased child of said son. It is recognized, however, that because of the different ages of descendants, of the probable fluctuations in the values of property, of the possible birth of other beneficiaries after distributions have been begun hereunder, and of the varying needs, sources of other income, and conduct, of the various beneficiaries hereunder, differences as to distributions to the several beneficiaries hereof may result. The Trustees are not required to equalize such differences in distributions but there is vested in the Trustees hereunder full power and authority in the absolute exercise of their discretion to equalize or adjust as between beneficiaries differences which may grow out of distributions made hereunder, so as to provide to the extent deemed practicable, just and consistent with the purposes of this trust, substantially equal benefits throughout the duration of the trust to all descendants of the Grantor's said son Robert I. Ingalls, Jr., per stirpes."
* * * * * *
"(d) . . . Upon the termination of the trust, the Trustees shall transfer and pay over the property then constituting said trust estate to such of the descendants of the Grantor's said son, Robert I. Ingalls, Jr., as may then be living, in equal shares per stirpes. . . ."
 Trust F
"WHEREAS, having gone through the period since the first World War and having witnessed many accumulations of years of effort swept away, and desiring to see his descendants safely and adequately provided for against the possibility of such a catastrophe, and desiring to establish a backlog for the protection of his descendants against the hazards of the time and their own youth and inexperience, the Grantor has long followed a policy of making liberal gifts in trust to his descendants heretofore or hereafter born;
"WHEREAS, commencing in the year 1925, the Grantor has been gradually relinquishing control of the business of The Ingalls Iron Works Company and its subsidiaries by making gifts of his stock interests therein to his son, Robert I. Ingalls, Jr., and to the children and descendants of said son;
"WHEREAS, the said policy of the Grantor has been further motivated by (a) a desire and determination to provide such descendants with an income, so that they may be assured of some degree of financial independence, irrespective of any adverse effect which changing conditions may hereafter have on the Grantor's remaining and independent estate, (b) the excessive rates of income taxes imposed by the Federal Government and the State of Alabama and (c) the ultimate desire of the Grantor to retire from business; and
"WHEREAS, the Grantor is desirous of further effectuating and carrying out said policy by providing such children and descendants of said Robert I. Ingalls, Jr., heretofore or hereafter born, with further income so that they may be assured of an added degree of financial independence, irrespective of any adverse effect which changing conditions may hereafter have on the Grantor's remaining and independent estate, by the execution and delivery of these presents.
"NOW THEREFORE, that for and in consideration of the premises and the sum of One Dollar ($1.00) and other good and valuable considerations by the Grantor received, and for the purposes herein provided, the Grantor has transferred and assigned, and by these presents does transfer and assign, unto the Trustees the property described in Exhibit `A' hereto attached and made a part hereof by reference, as well as any other items of property which may hereafter be granted, conveyed, assigned, transferred and delivered unto said Trustees under the terms hereof;
"TO HAVE AND TO HOLD the same unto the said ELLEN G. INGALLS, ROBERT I. INGALLS, JR. and M.F. PIXTON, as trustees, in trust, nevertheless, for the uses and purposes, upon the terms and *Page 1197 
conditions and with the powers and duties hereinafter stated:"
* * * * * *
"(b) The Trustees shall hold said trust estate in trust for the use and benefit of ELESABETH RIDGELY INGALLS AND BARBARA GREGG INGALLS, both children of the Grantor's son, Robert I. Ingalls, Jr., and of such of any other descendants of said Robert I. Ingalls, Jr., as may from time to time during the continuance of the trust be living. So long as any such descendant shall be under the age of twenty-one years, the Trustees shall use and apply for his or her support, comfort and education his or her pro rata share of the net income from said estate."
* * * * * *
The remaining pertinent provisions are the same as those in Trust E.
 Trust G
"WHEREAS, the Grantor has long followed a policy of making liberal gifts in trust to the children and descendants of Grantor's son, Robert I. Ingalls, Jr., heretofore or hereafter born; and
"WHEREAS, the said policy has been motivated by a desire and determination to provide such children and descendants with an income so that they may be assured of some degree of financial independence, irrespective of any adverse effect which changing conditions may hereafter have on the Grantor's remaining and independent estate and further by reason of the excessive rates of income taxes imposed by the Federal Government and the State of Alabama; and
"WHEREAS, in carrying out said policy the Grantor has heretofore made substantial gifts for the benefit of such children and descendants, and the Grantor is desirous of further effectuating said policy by providing such children and descendants with further income so that they may be assured of an added degree of financial independence, irrespective of any adverse effect which changing conditions may hereafter have on the Grantor's remaining and independent estate, by the execution and delivery of these presents.
"NOW THEREFORE, that for and in consideration of the premises and of the sum of One Dollar and other good and valuable considerations by the Grantor received, and for the purposes herein provided, the Grantor has transferred and assigned, and by these presents does transfer and assign, unto the Trustees, the property described in `Exhibit A' hereto attached and made a part hereof by reference, as well as any other items of property which hereafter may be granted, conveyed, assigned, transferred and delivered unto said Trustees under the terms hereof;
"TO HAVE AND TO HOLD the same unto the said ROBERT I. INGALLS, ROBERT I. INGALLS, JR. and M.F. PIXTON, as trustees, in trust, nevertheless, for the uses and purposes, upon the terms and conditions and with the powers and duties hereinafter stated. . . ."
The remaining pertinent provisions are the same as those in Trust E.
We do not find the terms of the trusts to be ambiguous and affirm the grant of summary judgment.
There are no disputed questions of fact, only a disagreement over the interpretation of the terms of the trusts. The grandchildren argue that the use of the term "per stirpes" is inconsistent with the use of the terms "descendants" and "in equal shares," which indicate a per capita distribution.
The term "per stirpes" is a technical term which means by roots or stocks or by representation. Black's Law Dictionary 1294 (4th ed. 1951). While it may be more familiar in the law of descent and distribution, its use is not restricted to that area of the law, nor is its use restricted to one-time or lump sum distributions. It is presumed that such legal terms are used in their legal *Page 1198 
sense unless other language indicates otherwise. Davis v.Davis, 289 Ala. 313, 267 So.2d 158 (1972); DeBardelaben v.Dickson, 166 Ala. 59, 51 So. 986 (1910).
 I.
The grandchildren attempt to show that other language in the trusts indicates that a per capita distribution was intended and that this other language is controlling.
First, the word "descendants" is said to mandate a per capita distribution to all living descendants of Robert Ingalls, Jr. This is not persuasive, since the use of the word "descendants" alone implies a per stirpes distribution. Shackelford v. Brown,361 So.2d 552 (Ala. 1978). In this case the settlors have gone further, as did the testator in Shackelford, and emphasized their intention by adding the term "per stirpes."
Second, the phrase "in equal shares" is said to show an intent to provide for a per capita distribution. This is not necessarily so, since in a per stirpes distribution the property is divided into equal parts according to the number of roots or stocks. Each root or stock takes an equal share.Shackelford v. Brown, supra.
Third, the grandchildren contend that the preambles are more important than the specific trust provisions in determining the intent of the settlors. Their position is that the preambles contain specific expressions of the settlors' intent to protect all descendants. We do not believe that the general statements of desire to benefit descendants contained in the preambles are controlling. The settlor's intent is to be gathered from the entire instrument. Ingalls v. Ingalls, 256 Ala. 321,54 So.2d 296 (1951). There is nothing in the general language of the preambles which conflicts with the specific statements directing a per stirpes distribution contained in various provisions of the trusts. The preamble read with the specific provisions forms a coherent whole. The grandchildren are descendants of Robert Ingalls, Jr., and are beneficiaries of the trusts. They will benefit from the trusts indirectly through distribution of income to their parents, or directly through distribution to themselves in the event their parents die before they do. Thus, we see no conflict between a per stirpes distribution and the language in the preambles.
The other arguments advanced by the grandchildren are not convincing. They argue that a per stirpes distribution in effect gives Mrs. Shook and Mrs. Gillet a life estate, and if this were the settlors' intention, they could have used other language. If a life estate had been intended, the settlors could have provided so in clear language. But they did not so provide, and there is no indication that a life estate was contemplated. Mrs. Shook and Mrs. Gillet are entitled to receive, and have received, distributions of principal as well as income, so that their interests constitute more than mere life interests.
It is argued that the only practical solution is to divide the amount to be distributed into two stocks, and then allow all of the descendants in each stock, regardless of degree of relationship, to share equally. While this would be a valid method of distribution if so expressed in the trusts, this is not a per stirpes distribution as that term is customarily used. We find nothing to indicate that this method was intended by the settlors.
 II.
Two other points are raised by the guardian ad litem for unborn descendants — whether summary judgment was inappropriate because there was a question regarding the co-trustees' (1) breach of fiduciary duty in voting Ingalls Iron Works Company stock, or (2) abuse of discretion in disbursing income.
The question of the co-trustees' breach of fiduciary duty in the voting of Ingalls Iron *Page 1199 
Works Company stock is not before us on this appeal, since it was not raised in any of the cross-claims or counterclaims which are the subject of this appeal. Furthermore, the grandchildren make no claim of abuse of discretion. They did claim a breach of fiduciary duty, but this dealt solely with the rights of the grandchildren to receive income, not with the trustees' discretion.
 III.
Affirmance finds further support in the doctrines of res judicata and collateral estoppel.
Res judicata and collateral estoppel (estoppel by judgment) are two separate rules or sets of rules for determining the conclusiveness of judgments. See Webster v. Gunter,336 So.2d 170, 172 (Ala. 1976) (Almon, J., concurring specially).
The elements of res judicata are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits. Stevenson v. International Paper Co.,516 F.2d 103 (5th Cir. 1975). If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action. McGruder v. B L Construction Co., 331 So.2d 257 (Ala. 1976).
Collateral estoppel operates where the subsequent suit between the same parties is not on the same cause of action. Requirements for collateral estoppel to operate are (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment. Stevenson v. InternationalPaper Co., supra. If these elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit. Gulf American Fire Casualty Co. v.Johnson, 282 Ala. 73, 209 So.2d 212 (1968).
The co-trustees contend that both res judicata and collateral estoppel bar the appellants from claiming the right to income or principal while their mothers are still living. In 1962, in Cause No. 123-306, Circuit Court of Jefferson County, Alabama, Mrs. Gillet and Mrs. Shook sought distribution of accumulated income and principal of Trusts B, C, and D. According to the terms of the trusts, such distribution was available to adult beneficiaries, who were entitled upon first distribution to no more than 25 percent of their share of the corpus. By cross-bill, Hamilton National Bank, co-trustee of Trusts B, C, and D, sought approval of its final accounting and resignation as trustee.
This action was consolidated with Cause No. 122-097, in which First National Bank of Birmingham, co-trustee of Trust E, sought approval of its final accounting and resignation as trustee.
The appellants were living in 1962 and were represented by guardians and guardians ad litem, as were the unborn descendants of Robert Ingalls, Sr.
The court's judgment in that consolidated action held that Mrs. Gillet and Mrs. Shook were the "sole primary adultbeneficiaries" of Trusts B, C, and D, and ordered distribution of all of the trust assets other than Ingalls Iron Works Company stock, which was less than the 25 percent limit. In so doing, the court stated that Mrs. Gillet and Mrs. Shook were "entitled to a distribution of accumulated income and/or principal not to exceed twenty-five per cent of the assets of each trust." This implies that ultimately their share will constitute the entire corpus of each trust, since no provision was made for any other beneficiaries. The court also approved the accountings of the resigning trustees, which showed that all distributions to beneficiaries had been made to Mrs. Gillet and Mrs. Shook. *Page 1200 
The guardian ad litem for the minors and the unborn descendants made no objections to the ordered distribution or to the accountings.[1]
There is no question that the first two elements of res judicata are satisfied. The third, identity of the parties, is also met. This condition does not require complete identity, but only that the party against whom res judicata is asserted was a party before. Geer Brothers, Inc. v. Crump, 349 So.2d 577
(Ala. 1977). Moreover, a minor fully represented in court, is bound by a valid judgment in the same manner as any other party. See Irwin v. Alabama Fuel Iron Co., 215 Ala. 328,110 So. 566 (1925).
The presence of the fourth element of res judicata, that each suit is based on the same cause of action, depends upon whether substantially the same evidence supports both actions. GeerBrothers, Inc. v. Crump, supra; Gulf American Fire CasualtyCo. v. Johnson, supra. Whether this condition is satisfied or not is not controlling, however, because we find that the appellants are barred by collateral estoppel, which operates without regard to the identity of the causes of action.
In order to reach the conclusion in the 1962 action that Mrs. Gillet and Mrs. Shook were entitled to 25 percent of the trust corpus and accumulated income without provision for other possible beneficiaries, the court necessarily concluded that no other descendants had a present right to distribution. This conclusion is strengthened by the approval of the resigning trustees' accountings, disclosing that the only beneficiaries receiving income were Mrs. Gillet and Mrs. Shook. Such a conclusion is obviously implied from the holding of the court and is necessary to support the judgment rendered. See Grund v.Jefferson County, 291 Ala. 29, 277 So.2d 334 (1973).
Appellants assert that the issues of res judicata and collateral estoppel may not be raised on this appeal. These defenses were set forth in the motions for summary judgment, and appellants argue that they were impliedly rejected by the trial court, since its ruling made no mention of these defenses and dealt, instead, with the distribution issue on the merits. Since the co-trustees made no cross-appeal, appellants urge that they may not now raise these issues.
A finding against the co-trustees on the defenses of res judicata and collateral estoppel is not to be implied from the trial court's judgment, since such a finding is not necessary to support the judgment. To the contrary, a finding in favor of the co-trustees on res judicata or collateral estoppel is compatible with the judgment holding that the rights to distribution are the same as those found in the 1962 actions.
We find that the trial court was correct in holding that the Ingalls Trusts B through G provide for a per stirpes distribution of income and principal and that Mrs. Shook and Mrs. Gillet, only children of Robert Ingalls, Jr., are presently the sole primary beneficiaries of the Ingalls Trusts.
For the foregoing reasons, this cause is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
[1] The guardians ad litem in that case are not the same guardians ad litem appointed in the present case. *Page 1201