467 So.2d 358 (1985)
GROVE TOWERS, INC., a Florida Corporation, Appellant,
v.
Raul Agustin LOPEZ and Teresa Urdaneta, Appellees.
No. 83-2683.
District Court of Appeal of Florida, Third District.
March 12, 1985.
Rehearing Denied April 29, 1985.
*359 Wallace, Engels, Pertnoy & Solowsky and Jay Solowsky, Miami, for appellant.
Schultz & Hollander and Howard J. Hollander, Miami, for appellees.
Before HENDRY, HUBBART and BASKIN, JJ.
HENDRY, Judge.
Grove Towers, Inc., a developer, appeals from the entry of an adverse final summary judgment which allowed Lopez and Urdaneta, appellees/purchasers, to rescind their purchase and sale agreement. For reasons more fully developed below, we affirm the decision of the trial court.
On October 1, 1980, the purchasers entered into a contract with appellant whereby they agreed to purchase a condominium unit in appellant's development. At the same time, appellees received certain documents as required by section 718.503(2), Florida Statutes (1979). Those documents reflected that Grove Tower Condominium would be completed by the end of 1982 and that there would be a total of 108 units.[1] Appellant received permission on November 3, 1982 to file amendments to the disclosure statement to change the completion date to "not later than April 1, 1983" and to change the total number of units to 98. Appellees did not receive either notice or copies of these amendments. On February 1, 1983, Grove Towers received a temporary certificate of occupancy for the development. On February 14, 1983, appellant notified appellees of its intent to close on the subject condominium. On March 31, 1983, appellees notified appellant that they would not close.
Appellees filed suit for declaratory judgment, breach of contract, two counts of violation of a statute (§§ 718.503 and 718.506, Fla. Stat. [1979]), and violation of the federal Interstate Land Sales Act (ILSA), 15 U.S.C. §§ 1701-1720 (1982) (effective June 1, 1979).[2] Appellant answered and filed affirmative defenses and a counterclaim alleging anticipatory breach of contract. Thereafter, appellant filed its motion for partial summary judgment and appellees responded by filing their own motion (later amended) for partial summary judgment. Both parties filed memoranda of law and a hearing was held on the cross motions. The trial court, after making detailed findings of undisputed facts and conclusions of law, entered a final summary judgment in favor of the purchasers. This appeal ensued.
*360 The trial court based its decision on two points: the failure to comply with the disclosure requirements of ILSA, and the failure to provide appellees with copies of the amendments to the disclosure statement as required by Rules 7D-17.06(2) and 7D-18.01(3), Florida Administrative Code, when those amendments made material changes. Because the failure to comply with ILSA is dispositive of the case, we will not decide whether the amendments made changes which materially altered or modified the offering in a manner which was adverse to the appellees.
The issues in this case revolve around whether appellant was exempt from the requirements of ILSA; that is, whether it was not required to file a statement of record with the Secretary of Housing and Urban Development nor to provide a property report to the purchasers, and whether the time for determining the exemption was at the time of formation of the contract or at the time of completion of the condominium. Both issues are intertwined and must be considered together.
The federal Interstate Land Sales Act provides several exemptions to its registration and disclosure requirements. The exemption most relevant to our analysis is found in 15 U.S.C. § 1702 (b)(1). That section provides an exemption for the sale or lease of lots in a subdivision containing fewer than 100 lots.[3] Appellant argues strenuously that Grove Towers Condominium contained 98 units when it was completed and it is the completion date which determines whether or not a development is subject to ILSA. We would ignore the plain language of the statute, as well as its purpose, if we accepted this argument.
In support of our holding we note that sections 1703(a)(1)(A) and (B) state:
(a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails 
(1) with respect to the sale or lease of any lot not exempt under section 1702 of this title 
(A) to sell or lease any lot unless a statement of record with respect to such lot is in effect in accordance with section 1706 of this title;
(B) to sell or lease any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee. (e.s.).
Section 1703(c) states:
(c) In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right. (e.s.).
Furthermore, in Orpheus Investments v. Ryegon Investments, Inc., 447 So.2d 257 (Fla. 3d DCA 1983), a case involving alleged violations of ILSA in the sale of a condominium unit, this court stated:
By the language of the 1968 Act, the violations Orpheus complains of[[4]] are of such a nature that they can only occur, *361 they in fact spring into being, at the moment the contract of sale is entered into. The omissions become such at the moment of contract formation, not at some later moment of contract fulfillment.
Id. at 259. Since the purpose of the act is to protect purchasers against fraudulent land sales schemes, Dorchester Development, Inc. v. Burk, 439 So.2d 1032, 1034 n. 1 (Fla. 3d DCA 1983), it is only reasonable that the statute require full disclosure before the purchasers sign a contract.[5]
Thus it is clear that, unless exempt (in which case no reports need to be filed or provided at any time), appellant was obligated to comply with ILSA's registration and disclosure requirements before appellees signed the purchase and sale agreement. Therefore, we need to examine appellant's alternative argument that at all times it intended to construct only 98 units, that appellees were given a price list reflecting the fact that the 18th and 19th floors, as well as the 20th and 21st floors, would be combined into two story penthouses for a total of 96 units, that the real estate agent involved in the sale told appellees there would be only 96 units, and thus it did not need to comply with ILSA because it "knew" that there would be less than 100 units at the time of completion. While this argument might have merit if we were considering whether the change from 108 to 98 units was "material" under Rule 7D-18.01(3), Florida Administrative Code, it has no merit under a statutory scheme wherein all of the requirements are fixed and violations are a matter of statutory definition.
At the time appellees signed the purchase and sale agreement on October 1, 1980, they were given condominium documents (disclosure statement and declaration of condominium, among others) which stated that Grove Towers Condominium would consist of a total of 108 units.[6] The building permit, issued on October 9, 1980, allowed construction on a building with 108 units. Additionally, advertisements in The Miami Herald, which started on October 5, 1980, stated that there would be only 108 units in the complex. While we can appreciate from a business standpoint that appellant would wish to have the option of selling either two story penthouses or separate units, depending upon demand, it is clear that, as sections 1703(c) and 1709 establish, ILSA is a strict liability statute. If a property report is required, and it is not given in advance of the signing of the contract, purchasers may revoke the contract within two years, 15 U.S.C. § 1703(c), or they may file suit within three years for damages, 15 U.S.C. § 1711. As long as appellant wanted the option to build 108 units, it was obligated to comply with ILSA.[7] Since it did not, appellees are entitled to the relief afforded by the trial court.
Affirmed.
NOTES
[1] The relevancy of this precise figure, corroborated by the building permit issued at the start of construction and by contemporaneous advertisements in The Miami Herald, will be discussed infra.
[2] In addition, appellees' complaint contained one count charging the City of Miami with negligent inspection of Grove Towers and alleging that there were violations of various provisions of the South Florida Building Code. The City of Miami was later dismissed from the suit.
[3] This court, following the lead of other courts, e.g., Nargiz v. Henlopen Developers, 380 A.2d 1361 (Del. 1977), has applied ILSA to sales of condominium units. Finst Development, Inc. v. Bemaor, 449 So.2d 292 (Fla. 3d DCA 1984); Orpheus Investments v. Ryegon Investments, Inc., 447 So.2d 257 (Fla. 3d DCA 1983); Dorchester Development, Inc. v. Burk, 439 So.2d 1032 (Fla. 3d DCA 1983). Contra Winter v. Hollingsworth Properties, Inc., 587 F. Supp. 1289 (S.D. Fla. 1984). The second district court of appeal has, in a recent decision, similarly applied ILSA to sales of condominium units. Appalachian, Inc. v. Olson, 468 So.2d 266 (Fla. 2d DCA 1985).
[4] While not specified in the opinion, the facts in the record on appeal show the violations to include, among others, the failure to provide a property report in advance of the signing of a contract.
[5] See Appalachian, Inc. v. Olson, at 268, holding that a sale occurs, for purposes of ILSA, when the agreement or contract is executed, and not when the completed unit is conveyed.
[6] The disclosure statement did describe the plan to provide the two story penthouses in place of the separate units. But the document went on to provide that at the developer's discretion, separate units would be built in place of the two story penthouses.
[7] Given the stringency of Florida's land sales and condominium laws, appellant may well have been able to receive a certificate of substantially equivalent state law under 15 U.S.C. § 1708, which would have obviated the need to comply with the registration and disclosure requirements.