545 So.2d 750 (1989)
Rita CONSTANTINE
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, INC., et al.
87-1163.
Supreme Court of Alabama.
April 28, 1989.
Stephen D. Heninger of Heninger, Burge & Vargo, Birmingham, for appellant.
James L. Clark and Lynn Baxley Ault of Lange, Simpson, Robinson & Somerville, Birmingham, for appellees.
JONES, Justice.
This is an appeal from a judgment on a directed verdict in favor of notary public Ardith Srack McMicken and her surety, United States Fidelity and Guaranty Company, Inc. ("USF & G"), on the ground of "estoppel by judgment." We affirm.
Because the estoppel-by-judgment defense is based on the judgment of the Court of Civil Appeals (Constantine v. First Alabama Bank of Birmingham, 465 So.2d 419 (Ala.Civ.App.1984), which adopted the trial court's findings of fact and conclusions of law, we set out the trial court's final judgment as contained in the Court of Civil Appeals' opinion:
"`Based upon the testimony and evidence, the Court makes the following findings of fact:
*751 "`1. The suit was brought by the plaintiff [First Alabama Bank of Birmingham] as a purchaser at a foreclosure sale to recover possession of certain real property under the provisions of Act. No. 327, Ala. Acts 1931, as amended by Act No. 172, Ala.Acts 1933, codified in Ala.Code, Title 62, Section 129 (1940, as recompiled 1958), and preserved by Code of Ala.1975, § 1-1-10. Defendant Emmanuel T. Constantine in his answer averred that the foreclosed mortgage was void and further that he was not in possession of the subject property. In her answer, defendant Margaret R. Constantine also averred that the foreclosed mortgage was void and further alleged that the plaintiff had violated federal and state consumer protection laws. In addition, Margaret R. Constantine filed a motion for equitable relief and a counterclaim and later filed an amendment to the counterclaim. The counterclaim as amended prayed that the subject foreclosure deed and two notes and two mortgages be set aside and declared null and void and that the counterclaimant be awarded damages for alleged negligence, wantonness, and fraud on the part of the plaintiff.
"`2. On August 21, 1979, the defendants executed a $60,000.00 note in favor of the plaintiff ... and as security signed a mortgage on the subject property....
The defendants signed a $20,000.00 note in favor of the plaintiff on October 25, 1979 ... and a second mortgage on the subject property....
"`3. On the occasion of each loan both defendants signed an authorization directing that the borrowed funds be deposited to various corporate checking accounts relating to family restaurant businesses. Even though Mrs. Constantine was employed, income from the restaurant businesses was used by the family to pay for utilities, food, clothing, and other living expenses. Mrs. Constantine saved most of her income for periodic gifts to their older children.
"`....
"`5. In connection with both loans both defendants signed mortgage loan extension agreements on November 20, 1979, ... February 19, 1980, ... July 11, 1980, ... January 7, 1981, ... and April 7, 1981. Interest payments were made on the occasions of the execution of the various extension agreements but no payment was ever made on either principal balance.
"`6. By letter of August 3, 1982, the attorney for the plaintiff advised Mr. Callahan, then attorney for both defendants, that a notice of foreclosure sale relating to the first mortgage would be published in the August 7, 14, and 21 editions of Alabama Messenger and that the foreclosure sale would be held on August 30, 1982. By agreement the sale was not held as scheduled. On December 3, 1982, the attorney for the plaintiff advised Mr. Callahan in his capacity as attorney for both defendants that another notice of foreclosure sale relating to the first mortgage would be published in the December 4, 11, and 18 editions of Alabama Messenger and that the foreclosure sale would be held on December 27, 1982. The foreclosure sale was held on December 27, 1982, as advertised and the plaintiff became the purchaser. A foreclosure deed was executed and recorded....
"`7. On January 4, 1983, the plaintiff made written demand by certified mail on the defendants for possession of the subject property.... Defendant Margaret R. Constantine signed a certified mail receipt on January 12, 1983, ... acknowledging receipt of the demand for possession. Between that date and the date of the hearing, the defendants obtained a divorce, Emmanuel T. Constantine conveyed all of his interest in the subject property to Margaret R. Constantine, and Emmanuel T. Constantine moved himself and all of his belongings to another address.
"`8. The signatures of defendant Margaret R. Constantine on the first mortgage ... and the second mortgage... were not made in the presence of the notary public, Ardith Srack, and no acknowledgement was taken from Mrs.

*752 Constantine on either occasion by Mrs. Srack. Because Margaret R. Constantine could not leave her place of employment on August 21 or October 25, 1979, Emmanuel T. Constantine was allowed on each occasion by J. Stanley Mackin, Sr., Executive Vice President of the plaintiff and a personal friend of both defendants, to take the mortgage to Mrs. Constantine's place of employment, where she signed each mortgage, along with various other papers, in the presence of only Mr. Constantine. On each of the two occasions when Mr. Constantine returned the mortgage to the plaintiff, Mr. Mackin instructed his secretary, Ardith Srack, now Ardith McMicken, to complete the acknowledgement paragraph that related to the signature of Mrs. Constantine.
"`9. Neither defendant offered to do equity by making restitution to the plaintiff of the value they received after the execution of the mortgages.
"`....
"`Based on the facts set out above, the Court finds that the notes and the mortgages and the foreclosure deed are not due to be cancelled or vacated because the defendants did not offer to do equity by making restitution to the plaintiff of such things of value as they received. [Montgomery v. Parker Bank & Trust Co., 256 Ala. 20, 53 So.2d 566 (1951); and Rhodes v. Schofield, 263 Ala. 256, 82 So.2d 236 (1955)]. All documents are due to be enforced to the extent that they embrace property not covered by Margaret R. Constantine's homestead exemption in the sum of $5,000.00 [Rhodes v. Schofield, supra.] Defendant Margaret R. Constantine should surrender possession of the premises sued for to the plaintiff within ten days from the date of the judgment [Ala.Code, Title 62, Section 129 (1940, as recompiled 1958), Code of Ala.1975, § 1-1-10] and at such time the plaintiff should deliver the sum of $5,000.00 to Defendant Margaret R. Constantine.
"`Defendant Emmanuel T. Constantine was not in possession of the subject property at the time this suit was filed. He has since conveyed all his right, title, and interest in the property to Margaret R. Constantine.
"`The Court further finds that there were no violations of any federal or state consumer protection laws and that the plaintiff was not guilty of negligence, wantonness or fraud.'"
Constantine v. First Alabama Bank of Birmingham, 465 So.2d at 420-21.
Finding evidence that supported "those actual findings ... as set forth in the [trial court's] final judgment," the Court of Civil Appeals affirmed the trial court's judgment and reasoned as follows:
"`It is of course well understood that when a mortgage is invalid and the mortgagor files a bill in equity to have it vacated on that account relief will be denied him unless he restores the consideration which he received from the mortgagee. (Citations omitted.)' Rhodes v. Schofield, [263 Ala. 256, 260, 82 So.2d 236, 239 (1955).] Here, a reasonable inference from the findings of fact in paragraph number 3 of the judgment is that Mrs. Constantine benefited from the funds which were borrowed from the bank, and there was other evidence to that effect. A signed, but improperly acknowledged, mortgage may be enforced in equity to the extent that it embraces property not exempt as a homestead and, in substance and effect, that is what the trial court did in this instance. Rhodes v. Schofield, supra. In short, the judgment of the trial court was correct."
Constantine v. First Alabama of Birmingham, 465 So.2d at 422.
We now quote from the record in the instant case the colloquy among the trial judge and the counsel for the parties during the argument on the defendants' motion for directed verdict, which took place outside the hearing of the jury:
"MR. CLARK [counsel for the defendants]: Let the record show that the defendants rest..... [A]t this time the defendants United States Fidelity & Guaranty Company, Inc., and Ardith *753 McMicken, separately and severally file a motion for directed verdict.
"MS. AULT [counsel for the defendants]: Your Honor, ... attached to our motion for summary judgment before this trial was the original case of Constantine v. First Alabama Bank of Birmingham, and in that case it was established that when there is faulty notarization of a mortgage that is not signed by two witnesses that an equitable lien arises and it provides an equitable remedy for the mortgagor ..., and unless the mortgagor is willing to do equity by making restitution of the monies received the mortgage is enforceable. Because Mrs. Constantine's signature was not notarized properly, her homestead exemption was conserved and the bank was ordered to pay Mrs. Constantine $5,000, but their mortgage was good because the Constantines did not make restitution to the bank for the monies they received.
"The testimony in that first trial which was in the judge's findings also shows that Mrs. Constantine benefited from the monies that were loaned by the bank, that she lived on those monies and ... also through her husband's salary which was paid by the business and she used her own monies from her own employment primarily for making gifts to the children and so forth. What we see this case as showing [is] that even if Mrs. McMicken breached a duty as notary, assuming she did, the breach of her duty was not a proximate cause of Mrs. Constantine's loss of her house. She would have lost her house under the ruling in the first Constantine case in any event, unless she offered to make restitution or restore the benefits she had received, which she has testified that she never did. Therefore, I think if you'll look at the case of Butler v. Olshan, [280 Ala. 181, 191 So.2d 7 (1966) ]....
".... In that case which did find a notary to be liable because the [loss] suffered was the cutting off of the equitable remedies of the mortgagors, a bona fide purchaser got the property and they could not make restitution, their equitable restitution cut off. That case also holds there are three elements.... There is the duty, there is the breach of the duty, but the breach of the duty has to be the proximate cause of the loss. And under the holding of the first Constantine case and under the testimony you've heard we don't see there's any way that the faulty notarization can be the proximate cause of Mrs. Constantine's loss. And therefore we're asking you to direct a verdict for Mrs. McMicken and USF & G as the surety....
"MR. HENINGER [counsel for the plaintiff]: Judge, I think it's clear even from what [Ms. Ault] has just argued of the three aspects of the authority Butler v. Olshan, they have to admit that a notary has a duty not to willfully or intentionally [attest to a] signing that is fraudulent, I think they admit that was breached in this case. The only thing that is not admitted is whether there is [evidence of] proximate causation of damages.... It's not what equitable remedies existed after foreclosure, this thing would have been stopped. Maybe this couple would have gotten a divorce two days after [Mrs. Constantine] found out this was a mortgage, assuming Ms. McMicken said `You understand this is a mortgage,' and Rita refused to sign..... [Mrs. Constantine] has told this court she would not have signed this document. Had she not signed, she would have preserved her home; not her homestead, but her home. That's the proximate causation right there. It's not just a faulty notarization. It is a failure to apprise [Mrs. Constantine] of the contents. The husband, if he had a duty, there's no statute on it to apprise her of the contents, the notary has a duty and falsely acknowledges that she had discharged that duty by satisfying herself that Mrs. Constantine knew the contents and voluntarily signed it..... She never knew it or signed its contents. That's the proximate causation. This mortgage would never have taken place. In addition, [Mrs. Constantine] already told the court she was unable to pay those equitable remedies [Ms. Ault] said existed. She's working. Their source of business *754 has gone away. But be that as it may, it's not for this court to speculate, I don't believe. It may be for the jury when they go back and consider what if she really had known what she was signing and refused to sign it, the business would have gone down the drain. They would have lost that. She probably would have divorced this guy for trying to scam her but she still would have had the home, and I suspect the domestic court would have given her all that interest which she eventually got anyway. That's the proximate causation in the case. I think we've satisfied all those elements and [we are] entitled to go to the jury.
"MS. AULT: May I speak one more time, please. If she hadn't signed, the bank wouldn't have been out ... the $80,000. At all times she was in control, even when she knew there had been a foreclosure and so forth she probably could have worked some sort of refinancing. She was always in control. She never came back, and is the bank supposed to eat the loss? She always was in control and she never made restitution. If there had been a forgery or something, it would have been different. She signed the documents. And other cases have held that when someone signs a document, he is responsible for that document. The notarization only takes the place of witnesses. It doesn't make her signature any more or less hers. Her signature was still there. If she had signed in front of two witnesses, she wouldn't need a notary. She did sign the document and, therefore, the mortgage was valid, but subject to her equitable remedy, which she never exercised.
"....
"MR. CLARK: Our point is that Mrs. Constantine's opportunities and chances for relief were all present in the original [earlier trial of Constantine v. First Alabama Bank of Birmingham ] and expired with the conclusion of that case.... I think you have questions here of an estoppel, lack of proximate cause, a failure to do equity, mitigation of damages, she just testified ... that she made no effort to refinance that house. Sure, she would have had to pay for it. That would have prevented her from losing the house.... There is nothing for a jury to determine.... There is nothing left in this matter but legal questions.
"....
"THE COURT: All right. In regard to the defendants' motion for a directed verdict, the court is going to grant that motion. I believe the plaintiff in this case is estopped from proceeding due to the ruling in the case of Constantine v. First Alabama Bank of Birmingham.... In reading that decision, the same evidence presented in this case was presented on the counterclaim in that case, and the court held that there was no violation of federal or state consumer protection law and that the plaintiff was not guilty of negligence, wantonness or fraud, the plaintiff being First Alabama Bank of Birmingham, their actions predicated on the acts of Ardith McMicken.
"Now, with the principal being absolved, I think the plaintiff in this case is estopped from proceeding against the agent after the principal has been absolved of the liability of the acts of the agent.
"MR. HENINGER: May I point something out. This is notary public and the bond.... There is no principal-agent relationship or averment in this case. In that case, Ms. McMicken was not a party. This is specifically against a notary. The statute is not addressed in that case. The statute applied to a notary obligation. They were not raised at all, neither the issue nor the party.
"THE COURT: They're set out in the opinion. This evidence is set out in the opinion about Ms. Srack at that time, and it was presented to the court and litigated.
"MR. HENINGER: I just want to point out for the record the notary was not a party and the notary's duty was not part of the case.
"THE COURT: That's why it's estoppel rather than res judicata."
*755 In briefs to this Court, the parties set out their further contentions. We agree with that portion of the plaintiff's argument that, applying the law governing the duties and obligations of a notary public to the instant facts, concluded that the notary who "acknowledged" the signature of Mrs. Constantine on the mortgages and accompanying documents had done so falsely. The trial court, however, was correct in holding that the law, as set out in Rhodes v. Schofield, supra, will operate to "save" a document falsely or improperly acknowledged and that "a court of equity may enforce [the document] to the extent that it embraces property not exempt." Rhodes v. Schofield, 263 Ala. at 264, 82 So.2d at 243.
Unlike the trial court, we can not agree with the defendants' contention that a principal/agent relationship existed between the bank and the notary public or her surety, thus providing a defense to the instant defendants as "agents" of the bank, which, as "principal," had been "absolved" of liability in the earlier case. However, neither do we agree with the plaintiff's assertion that she is not estopped in her suit against the instant defendants by the judgment in Constantine v. First Alabama Bank of Birmingham, supra; therefore, we affirm the judgment of the trial court.
Based on our review of the law in Alabama as to whether estoppel by judgment disposes of the instant appeal, we hold that the plaintiff, Mrs. Constantine, is estopped from proceeding against the instant defendants by the previous judgment against her in favor of the Bank.
In its earlier consideration of a similar issue, this Court set out a thorough discussion of the defenses of res judicata and collateral estoppel (or estoppel by judgment). The Court held, in pertinent part:
"Broadly stated, the general rule is that to sustain a plea of ... res adjudicata or estoppel by judgment, the parties must be the same, the subject matter the same, the point must be directly in question, and the judgment must be rendered on that point. Hall & Farley v. Ala. Terminal Co., 173 Ala. 398, 56 So. 235. And, as said in Clark v. Whitfield, 213 Ala. 441, 105 So. 200, 203, `A judgment, to conclude either party as to the subject-matter, must be such as to work a mutual estoppel; hence a plea of res judicata, to be good, must show the parties litigant in the two suits are the same ... or else they must be in privity of estate or blood or in law with the parties in such former action.... That is, a person who can claim the benefit of a judgment as an estoppel upon his adversary is one who would have been prejudiced by a contrary decision in the [previous] case.'

"....
"It is of course well settled also that a judgment is conclusive, not only upon those who were actual parties to the litigation, but also upon all persons who are in privity with them, defined by some of the authorities as `a mutual or successive relationship to the same rights of property.' Bigelow v. Old Dominion Copper Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas. 1913E, 875.....
"....
".... The unilateral character of the estoppel of an adjudication in such cases is justified by the injustice which would result in allowing a recovery against a defendant for conduct of another, when that other has been exonerated in a direct suit....."
Interstate Electric Co. v. Fidelity & Deposit Co. of Maryland, 228 Ala. 210, 212-23, 153 So. 427, 428-29 (1934). See, also, Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala.1978); Geer Bros., Inc. v. Crump, 349 So.2d 577 (Ala. 1977); and Sosebee v. Alabama Farm Bureau Mut. Cas. Ins. Co., 56 Ala.App. 334, 321 So.2d 676 (1975).
The Court's holding in Interstate Electric has been repeatedly cited as authority in cases involving the applicability of estoppel by judgment, and we reaffirm the law as set out in that case. Therefore, to interpose a valid defense of collateral estoppel, as interpreted by the Interstate Electric Court, two elements are required:
*756 1) The party claiming the benefit of the prior judgment as an estoppel against the adversarial party is one who would have been prejudiced by a contrary decision in the previous case; and 2) the party against whom the estoppel by judgment is sought either was an actual party in the previous case or was in privity with, or is a successor to the rights of, an actual party in the previous case. See Wheeler, supra; and Geer Bros., supra.
Finding these requisite elements in the present case, we hold that the trial court did not err in sustaining the defendants' "estoppel by judgment" defense.
AFFIRMED.
MADDOX, ADAMS, HOUSTON and STEAGALL, JJ., concur.
HORNSBY, C.J., and ALMON and KENNEDY, JJ., dissent.
HORNSBY, Chief Justice (dissenting).
I can not agree that the principles of collateral estoppel apply to bar this claim.
Defendants' principal argument is that plaintiff's own initial negligence and subsequent failure to take steps to avoid the effect of the mortgage were the cause of her injury. Plaintiff signed the mortgage before it was presented to the notary. The notary has no duty to stop someone from signing something of which the notary is unaware. The acknowledgement is a substitute for having two witnesses, Code 1975, § 35-4-23, and the instrument would still serve as the basis for an equitable, as opposed to a legal, mortgage. Rhodes v. Schofield, 263 Ala. 256, 82 So.2d 236 (Ala. 1955); Constantine v. First Alabama Bank of Birmingham, 465 So.2d 419 (Ala. Civ.App.1984). Defendants argue that at best, plaintiff could have taken some action to undo what had already been done, if the notary had required plaintiff to be present and the notary's inquiries had triggered further investigation into the true nature of the document she had signed.[1] Further an equitable mortgage was enforced in Constantine when Ms. Constantine, who is now plaintiff in this case, failed "to do equity by making restitution to the plaintiff [mortgagee] of such things of value as [she had] received." 465 So.2d at 421. Therefore, a strong argument can be made that plaintiff's own conduct is the proximate cause, as a matter of law, of her loss. However, I believe that a factual question is presented on the issue of whether plaintiff's conduct was the cause of her loss and, therefore, I think a directed verdict is inappropriate.[2]
The majority opinion, applying the traditional principles of collateral estoppel or estoppel by judgment, concludes that all the traditional elements are met and, therefore, that plaintiff is estopped from pursuing this claim. I can not agree with the conclusory statement that the first prong of the test, that the notary would have been prejudiced by a contrary decision in the prior case, has been met. The notary was not a party to the prior suit. Where is the privity of parties between the Bank and the notary? The majority opinion holds that there is not a principal/agent relationship in this context by which a finding for the principal would absolve the purported agent of liability. If there was no such relationship, then none of the acts of the notary would serve as a basis for holding the bank liable or not liable.
An exception to the general rule of mutuality as to estoppel is recognized in Interstate Electric Co. v. Fidelity & Deposit Co. of Maryland, 228 Ala. 210, 212, 153 So. 427, 429 (1934), "where the liability of defendant is altogether dependent upon the culpability of one exonerated in a prior suit, upon the same facts, when sued by the same plaintiff." Plaintiff claims that she lost her house because an unauthorized mortgage existed on the house and that mortgage was foreclosed. Constantine determined that the mortgage was valid in *757 equity because plaintiff failed to make restitution. This conclusion, however, does not address the question of whether the equitable mortgage came into existence as a result of the notary's breach of duty. In other words, while the plaintiff may have been bound by the mortgage, the defendant may be liable to the plaintiff for giving the instrument apparent "legal" (as opposed to equitable) effect and inducing the lender to accept the mortgage as security for the note. Without such apparent "authenticity," the entire transaction may never have taken place. Therefore, because the liability of this defendant was not "altogether dependent upon the culpability of one exonerated in a prior suit," the exception to the rule of mutuality does not come into play, and collateral estoppel does not preclude this claim.
ALMON and KENNEDY, JJ., concur.
NOTES
[1] Code 1975, § 35-4-29, sets forth the form of acknowledgment, which includes a statement that the notary certifies that the signatory, "being informed of the contents of the conveyance," voluntarily executed the same.
[2] The suit was filed before June 11, 1987; therefore, the "scintilla rule" applies. See Code 1975, § 12-21-12.