ON APPLICATION FOR REHEARING
This Court's original opinion of January 11, 1991, is withdrawn, and the following is substituted therefor.
This appeal is from a summary judgment entered in favor of Dr. Thomas Windham and Linda Windham, husband and wife, and against N C Properties. Because we find no genuine issue of material fact in the evidence presented, we affirm.
N C Properties sued AmSouth Bank, N.A., the Windhams, and Vanguard Bank and Trust Company,[1] alleging breach of four real estate purchase contracts by the Windhams. The Windhams counterclaimed, alleging N C's failure to comply *Page 1046 
with the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701
et seq. ("ILSFDA" or "the Act"). In its answer to the counterclaim, N C claimed it was exempt from compliance with the Act under three provisions of the Act: 1) § 1702(a)(2), which allows an exemption for properties to be completed in less than 2 years; 2) § 1702(b)(1), which allows an exemption for properties containing fewer than 100 unexempt units; and 3) § 1702(b)(5), allowing an exemption for properties requiring a warranty deed to be delivered to the purchaser within 180 days from the signing of the sales contract.
The Windhams filed a motion for summary judgment, arguing that the exemptions contained in § 1702(a)(2) and (b)(1) were inapplicable.[2] The trial court granted the Windhams' motion for summary judgment, basing its holding on the res judicata effect of this Court's decision in N C Properties v. Pritchard,525 So.2d 1346 (Ala.), cert. denied, 488 U.S. 856, 109 S.Ct. 146,102 L.Ed.2d 118 (1988), in which we held that East Pass Towers, the condominium development in this case, had more than 100 unexempt units, placing it outside the exemption of § 1702(b)(1) and within the requirements of the Act. In its summary judgment, that trial court stated that "by issue preclusion or collateral estoppel [it was] foreclosed from letting another trier of the facts, in a different circuit, determine . . . whether or not there are more than 100 units in the same development in Florida."
On appeal in the instant case, N C presents one issue: Whether the Windhams were entitled to a summary judgment based on the doctrine of collateral estoppel. In reply, however, the Windhams raise the issue of N C's "claimed" exemption from the requirements of the Act under the specific provisions originally pleaded by N C, which issue N C addresses in its reply brief to this Court.
We hold that, while the doctrine of collateral estoppel (sometimes referred to as the doctrine of issue preclusion) does not apply, there is no evidence to support an exemption under § 1702(a)(2), (b)(1), or (b)(5). Therefore, we affirm the judgment of the trial court.
We will first discuss the issue of collateral estoppel and then discuss the specific exemptions as pleaded by N C.
 Collateral Estoppel
This Court has frequently discussed the doctrine of collateral estoppel, addressing the requirements necessary for application of that doctrine. In Wheeler v. First Alabama Bankof Birmingham, 364 So.2d 1190 (Ala. 1978), we stated that "[c]ollateral estoppel operates where the subsequent suit between the same parties is not on the same cause of action," and that the "[r]equirements for collateral estoppel to operate are (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment." (Emphasis supplied.) Id. at 1199 (citing Stevenson v. International PaperCo., 516 F.2d 103 (5th Cir. 1975)). The Wheeler requirements were refined in Constantine v. United States Fidelity Guaranty Co., 545 So.2d 750 (Ala. 1989), in which we enunciated two requirements for the application of the doctrine of collateral estoppel:
 "(1) The party claiming the benefit of the prior judgment as an estoppel against the adversarial party is one who would have been prejudiced by a contrary decision in the previous case; and (2) the party against whom the estoppel by judgment is sought either was an actual party in the previous case or was in privity with, or is a successor to the rights of, an actual party in the previous case."
Id., at 755-56. (Emphasis original.)
Although the issue in N C Properties v. Pritchard, supra, concerned the applicability of § 1702(b)(1), which section is at issue in the instant case, collateral estoppel will not preclude the trial court from hearing the case between N C and the Windhams. The Windhams were not parties to *Page 1047 
the Pritchard case, nor are they affected by the decision in that earlier case. Questions were raised in this case regarding exemptions for two of the Windhams' condominium units under § 1702(a)(2), which could have affected the exemption provided by § 1702(b)(1), thereby rendering nonidentical the issues inPritchard and the issues in the instant case.
Moreover, § 1702(b)(1) exempts certain "sales" and not, as the Windhams contend, an "entire development." Therefore, the question whether the sales to the Pritchards were part of a common promotional plan to sell 100 or more units is not identical to the issue presented here (i.e., whether the sales to the Windhams were part of such a plan).
Because issue preclusion is one aspect of res judicata and is frequently referred to as collateral estoppel, the same rationale that bars the operation of collateral estoppel, under these facts, likewise bars the operation of issue preclusion.
 ILSFDA Exemptions
N C pleaded exemptions under § 1702(a)(2), (b)(1), and (b)(5). On appeal, however, neither party argued the applicability, or nonapplicability, of § 1702(b)(5). Therefore, because there was no evidence presented to support such an exemption, we will not discuss that subsection.
N C further asserted an exemption under § 1702(a)(2). N C argued that, because two of the sales contracts provided a completion date within two years, it is exempt from the registration and disclosure provisions of the Act. The Windhams, however, argue that the language in those sales contracts does not create an "unconditional commitment" to complete the units within two years and, therefore, does not place the units within the exemption. We agree. The contracts state that in the event the units are not completed by the date established, "each party shall be relieved of all obligations to the other" and the Windhams' deposit will be refunded. This language serves to limit any action that could be taken by the Windhams in the event the units were not completed within the two-year period. As was stated in Dorchester Development, Inc.v. Burk, 439 So.2d 1082, 1034 (Fla.Dist.Ct.App. 1983):
 "A construction contract obligating the seller to complete the called-for building by a time certain is not the equivalent of a contract . . . which limits the purchaser to the right to the return of his deposit in the event the building is not constructed by a certain time. Where the seller is obligated to complete by a time certain, the purchaser is not limited . . . to the remedy of rescission, but he may affirm the contract and seek damages."
See, also, Schatz v. Jockey Club Phase III, Ltd., 604 F. Supp. 537
(S.D.Fla. 1985). Clearly, the language in the contracts between N C and the Windhams merely limits the remedies available to the Windhams. Because there is no unconditional commitment to complete the units within the two-year period, the units do not fall within the exemption provided under § 1702(a)(2).
The third exemption asserted by N C is based on § 1702(b)(1) of the Act. Section 1702(b)(1) provides an exemption to the disclosure and registration requirements of the Act when the lots in a subdivision containing fewer than 100 lots, which are not exempt under subsection (a) of this section, are offered for sale or lease. N C argues that it is exempted under (b)(1) because: (1) phase I has 55 units and should not be combined with phase II, which has 46 units, for purposes of determining whether there were more than 100 lots for exemption purposes under § 1702(b)(1); or (2) if the two phases are counted together, the two units sold to the Windhams that had completion dates within two years are not to be included in the "100 lots" because they would be exempt units under subsection (a) for purposes of determining whether there were more than 100 unexempt units.
An "offer" is defined as including "any inducement, solicitation, or attempt to encourage a person to acquire a lot in a subdivision." 15 U.S.C. § 1701(11) (Emphasis added.) A "subdivision" is defined as "any land which is . . . divided or is *Page 1048 
proposed to be divided into lots . . . for the purpose of sale or lease as part of a common promotional plan." § 1701(3). A "common promotional plan" under the Act is
 "a plan, undertaken by a . . . developer . . ., to offer lots for sale . . . where such land is offered for sale by such a developer . . ., and such land is contiguous or is known, designated, or advertised as a common unit or by a common name, such land shall be presumed, without regard to the number of lots covered by each individual offering, as being offered for sale or lease as part of a common promotional plan."
§ 1701(4).
Under the terms of the Act, which are to be applied liberally in favor of broad coverage, De Luz Ranchos Inv., Ltd. v.Coldwell Banker Co., 608 F.2d 1297 (9th Cir. 1979), phase II of East Pass Towers is part of the common promotional plan. N 
C admits that it had retained the option to build the second phase and had reserved the land. The promotional materials depicted twin towers joined by a common lobby. The "Declaration of Condominium" contained a provision stating that the developer had this option.
This Court in Pritchard relied on a Florida decision, GroveTowers, Inc. v. Lopez, 467 So.2d 358 (Fla.Dist.Ct.App.),cert. denied, 480 So.2d 1294 (Fla. 1985). Grove Towers held that "[a]s long as appellant wanted that option to build [over 100 units], it was obligated to comply with [the ILSFDA]. GroveTowers, 467 So.2d at 361. N C, by its own statements, admits that it wanted the option to build phase II. Its argument that these units were not formally offered for sale and that they were not advertised is insufficient in this case to overcome the presumption of coverage under ILSFDA. The evidence before the trial judge on the motion for summary judgment showed, as a matter of law, following this Court's decision in Pritchard, that the two phases were to be treated as part of a common promotional plan.
N C alternatively argues that the two units claimed to be exempt under § 1702(a)(2) are to be deducted from the total units in determining whether the number of units is over 100. The registration and disclosure requirements of ILSFDA do not apply to "the sale or lease of lots in a subdivision containing fewer than one hundred lots which are not exempt under subsection (a)."
Because we find that N C is not entitled to the exemption under § 1702(a), we hold that these two units cannot be subtracted from the total units in determining the total units for § 1702(b) purposes.
For the reasons stated herein, we affirm the judgment of the trial court.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] AmSouth Bank issued letters of credit on behalf of the Windhams in a condominium sales transaction. A summary judgment was entered in favor of AmSouth Bank, and that judgment was affirmed in N C Properties v. AmSouth Bank, N.A.,558 So.2d 906 (Ala. 1990). Vanguard Bank and Trust Company was the escrow agent for the condominium complex and had attempted to call in the letters of credit issued by AmSouth, which letters AmSouth refused to fund. Neither AmSouth nor Vanguard is a party to this appeal.
[2] Neither party argues, in any detail, the applicability of § 1702(b)(5) in this appeal.