Lei ABBOTT, Plaintiff-Appellant,

v.

Harlan Owens WILLIAMS, Jr., Defendant-Appellee.

No. 88–7675.

United States Court of Appeals, Eleventh Circuit.

Nov. 30, 1989.

McElvy & Ford, Douglas McElvy, Tusca-
loosa, Ala., for plaintiff-appellant.

Lee, Barrett, Mullins, Smith & Smithart,
P.C., Michael D. Smith, Tuscaloosa, Ala.,
for defe .dant-appellee.

Before TJOFLAT, Chief Judge,
JOHNSON, Circuit Judge, and
ESCHBACH*, Senior Circuit Judge.

* Honorable Jesse E. Eschbach, Senior U.S. Cir-
cuit Judge for the Seventh Circuit, sitting by
designation.

TJOFLAT, Chief Judge:

This is a tort suit, brought by Lei Abbott
against her former husband, Harlan Owens
Williams, Jr.[1] The district court granted
Williams summary judgment on the ground
of res judicata, concluding that Abbott's
tort claim against Williams, based on con-
duct that occurred during the parties' mar-
riage, had been previously adjudicated by
the state court divorce decree that dis-
solved the marriage. We reverse.

## I.

In September 1987, Abbott filed suit for
divorce in the Circuit Court of Tuscaloosa
County, Alabama. In her complaint, she
alleged complete incompatibility between
the parties and irretrievable breakdown of
the marriage and requested dissolution of
the marriage on those grounds. Abbott
also alleged, in the same complaint, that
Williams had physically abused her, and
she successfully sought a temporary re-
straining order (TRO) against Williams.
The TRO enjoined Williams from "harass-
ing, intimidating, threatening, assaulting,
[or] attacking" Abbott. In December, the
parties entered into a settlement agree-
ment, which, along with the injunctive pro-
visions of the TRO, was merged into a final
divorce decree at the request of the parties.
The decree ordered the marriage dissolved
"on account of incompatibility of temvera-
ment and irretrievable breakdown of the
marriage as alleged in the Complaint."
The settlement agreement specifically pro-
vided for: (1) payment of $21,000 from
Williams to Abbott; (2) division of personal
property used or acquired during the mar-
riage; (3) restoration of Abbott's maiden
name; (4) costs of the divorce action to be
paid by Williams; (5) continuation of the
TRO's injunctive provisions; and (6) the
parties' living separate and apart without
harassing, threatening, or intimidating one
another.

In June 1988, Abbott brought this action
in the district court, alleging battery, inten-
tional infliction of emotional harm, and out-

1. The district court had diversity jurisdiction of
this action under 28 U.S.C. § 1332 (1982).

rage. Williams, in his answer, pled the affirmative defenses of accord and satisfaction, payment and release, and res judicata. He then moved for summary judgment based on the pleadings in the tort action and on the complaint, TRO, and final decree in the divorce action.

Abbott submitted two affidavits in opposition to Williams' summary judgment motion: her own and one from the attorney who represented her in the divorce action. Both affiants stated that the settlement agreement covered only property division in contemplation of the divorce, that the agreement was not intended to release or resolve other claims, and that neither the parties nor their attorneys had even discussed release or resolution of other claims.

The district court granted Williams' motion for summary judgment on the ground of res judicata, apparently concluding that, under Alabama law, a divorce decree extinguishes by operation of law a tort action that accrues during a marriage. As an alternative ground, the court held that the terms of the property settlement indicated that the parties had in fact disposed of the tort claim in the course of reaching a settlement agreement. Abbott appealed the grant of summary judgment.

In part II of this opinion, we first show that, in Alabama, a divorce decree does not automatically extinguish all tort claims based on conduct that occurred during the marriage. We then consider whether, on the facts of this case, the settlement agreement so clearly disposed of the tort claim as to warrant summary judgment in favor of Williams. We conclude that it did not.

## II.

Although a district court's entry of summary judgment is reviewed de novo, *Complete Concepts, Ltd. v. General Handbag Corp.*, 880 F.2d 382, 393 (11th Cir.1989), we generally accord deference in diversity cases to a district court's interpretation of the law of the state in which it sits, *Red*

*Diamond Supply, Inc. v. Liquid Carbonic Corp.*, 637 F.2d 1001, 1003 (5th Cir. Unit A Feb. 1981), *cert. denied*, 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 102 (1981).[2] In this diversity case, which is governed by Alabama law, however, we are unable to agree with the district court's reading of that law as precluding Abbott's tort action on the grounds of res judicata.

### A.

The Alabama Supreme Court has defined the operation of the res judicata doctrine as follows: "If [all] elements are present, then the former judgment is an absolute bar to any subsequent suit *on the same cause of action,* including any issue which was or could have been litigated in the prior action." *Wheeler v. First Alabama Bank,* 364 So.2d 1190, 1199 (Ala.1978) (emphasis added). As set forth by the Alabama Supreme Court in *Wheeler,* those elements are: "(1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) *same cause of action present in both suits." Id.* (emphasis added). The *Wheeler* court explained further that the fourth element depends upon whether substantially the same evidence supports both actions. *Id.* at 1200. While the first, second, and third elements are satisfied in the current case, the fourth element is not established according to directly applicable Alabama law.

In *Ex parte Harrington,* 450 So.2d 99 (Ala.1984), the Alabama Supreme Court specifically answered the question of whether the cause of action in a tort suit based upon conduct occurring during the parties' marriage is necessarily identical to the cause of action in a divorce suit where substantially the same conduct is alleged as a ground for divorce. In *Harrington,* a wife was permitted to file a tort action against her husband for assault and battery in one county, although she had al-

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

ready filed a divorce complaint, alleging the same operative facts, in another county. The *Harrington* court rejected the husband's argument that the wife should be required to join her claims, given the merger of law and equity, and held that the tort and divorce actions did not involve the same cause of action. *Id.* at 101–02. The court compared the issues in both the tort and the divorce actions:

> [T]he issues before the [court in which the divorce action was filed] included the following:
>
> (1) divorce—termination of the marriage res
>> (a) incompatibility
>> (b) irretrievable breakdown of the marriage
>> (c) actual violence
>> (d) habitual drunkenness
>
> (2) property division
> (3) alimony
> (4) child custody and support
> (5) attorney's fees
>
> In the tort action ... the issues involved are:
>
> (1) the nature of the wrong committed by defendant;
> (2) the amount of compensatory damages recoverable by plaintiff;
> (3) the amount of punitive damages recoverable by plaintiff;
> (4) a determination by a jury of all the factual issues set forth.

*Id.*

Observing that "substantially different evidence" was required to support each action, the court stated: "The mere fact that plaintiff included in her divorce action a charge that defendant assaulted her does not make the divorce action a cause of action identical to the assault and battery action...." *Id.*

Appellee Williams points out that, in contrast to the current case, *Harrington* involved a tort suit filed before the divorce action had proceeded to a final judgment. That contrast is irrelevant, however, for the purpose of determining whether the causes of action are identical. Because, according to Alabama law, identity of causes of action is a necessary element in the defense of res judicata, res judicata does not bar Abbott's tort suit against her former husband unless the same issues to be considered in her tort claim were in fact raised and resolved in the divorce action.

Several Alabama Supreme Court cases cited in Williams' brief and by the district court below have held that a subsequent tort action, brought by one former spouse against the other and based on conduct that occurred during the marriage, was barred by the res judicata effect of a prior divorce judgment. *See Smith v. Smith,* 530 So.2d 1389 (Ala.1988); *Weil v. Lammon,* 503 So.2d 830 (Ala.1987); *Jackson v. Hall,* 460 So.2d 1290 (Ala.1984). These cases, however, do not require us to alter our view that, under Alabama law, Abbott's claim is not necessarily barred by res judicata. While the Alabama Supreme Court held in each instance that the tort action was barred, it did so after a case-specific determination that preclusion was appropriate under the circumstances.

In *Jackson,* decided just months after *Harrington,* the court did not reverse course and hold that divorce and tort actions based on similar conduct are necessarily identical. Rather, the court explained its approach to the problem before it as follows: "The question here ... is whether or not [the] action is barred under the material before the trial court on the summary judgment motion. The answer to this question *depends upon the construction of the agreement of the parties* and the effect of the divorce decree." 460 So.2d at 1292 (emphasis added). The former spouses' separation agreement, which was merged into the divorce decree, clearly indicated plaintiff's intent to make a full settlement of *all* claims, including a claim for assault and battery, in exchange for payment of a sum of money. The court concluded: *"Thus,* the question of liability for a pre-existing cause of action for an assault by one spouse against the other was decided in the divorce action." *Id.* (emphasis added).

In *Weil,* the court again held that the tort action was barred when the plaintiff

had previously asserted the alleged tort in support of her claim for alimony, thereby making the elements of the tort claim—including fault and damages—issues in her divorce action. Citing *Jackson*'s holding that res judicata barred the action under the circumstances of that case, the *Weil* court stated that the same result was compelled by the facts of the case before it. 503 So.2d at 832.

In a special concurrence to *Weil*, Justice Adams agreed that, given the facts of the case, principles of res judicata barred the wife's tort action. He wrote separately, however, to emphasize his opinion that a final divorce judgment does not "necessarily foreclose[ ] every cause of action that could exist between the former husband and wife." *Id.* at 832 (Adams, J., specially concurring). Justice Adams concluded:

> Where the sole ground for the divorce ... is fully litigated in a divorce proceeding, I would hold that a party is foreclosed from relitigating that cause of action in another forum. Also, where the parties agree on a settlement of all claims arising out of the marital contract, I would hold the settlement would be a bar to any future action.

*Id.*

This language foreshadowed that of *Smith*, the next case to consider the issue. In *Smith*, Justice Adams, writing this time for the court, referred to both *Weil* and *Jackson* as cases in which a plaintiff's tort action against a former spouse was barred given the specific circumstances. 530 So.2d at 1390–91. The *Smith* court held once again that the particular plaintiff was barred, "[u]nder the circumstances of this case," where the husband's assaultive conduct and the wife's resulting injuries had been the subjects of extensive negotiations and an eventual settlement. *Id.* at 1391.

The *Smith* court took the opportunity, however, to explain the *Smith*, *Weil*, and *Jackson* line of cases in light of *Harrington*. The court explained that its decision against the plaintiff in *Weil* "did not overrule the case of *Ex parte Harrington*, ... leaving for it a field of operation where there has not been a settlement of all claims by the parties, or a claim fully litigated in a divorce case that had proceeded to a final judgment." *Id.* at 1391.

■ Thus, Alabama precedent does not establish a bright-line rule that a divorce judgment automatically precludes one former spouse from suing the other in tort based upon conduct which occurred during the marriage. Rather, it suggests that each such case be examined on its own facts and circumstances: a case is within the "field of operation" left open by *Harrington* if a settlement agreement, merged into a final divorce judgment, did not cover the tort claim, or if all elements of the tort claim were not fully litigated and decided in the divorce action, even though the divorce action has proceeded to final judgment. The district court's grant of summary judgment, to the extent that it was based on an understanding of Alabama law as establishing a blanket rule of preclusion, was based upon an erroneous interpretation of Alabama precedent.

■ Before turning to the specifics of Abbott's case, in further support for our reading of Alabama law, we consider the implications that the forced joinder of tort claims in a divorce action would have for the parties' right to a jury trial on those claims. *See Harrington*, 450 So.2d at 101 (differentiating tort and divorce claims in part on availability of jury determination of tort claim). The district court cites *Weil* for the proposition that, given the merger of law and equity and Alabama's liberal joinder rules, there is no reason not to settle all claims between divorcing spouses in the divorce action. *See Weil*, 503 So.2d at 832. We do not read *Weil* as *requiring* that all claims be settled in the divorce action, however. As Justice Adams points out in his concurrence to *Weil*, if a divorcing spouse must litigate every cause of action in the divorce proceeding, he or she would be denied the right to trial by jury on the tort claim, since a jury trial in a divorce action is not provided by Alabama law. *Id.* (Adams, J., specially concurring).

The Wisconsin Supreme Court considered precisely this issue in *Stuart v. Stuart*, 143 Wis.2d 347, 421 N.W.2d 505 (1988). The

court held that forcing such a dilemma on a divorcing spouse would contravene public policy:

> If an abused spouse cannot commence a tort action subsequent to a divorce, the spouse will be forced to elect between three equally unacceptable alternatives: (1) Commence a tort action during the marriage and possibly endure additional abuse; (2) join a tort claim in a divorce action and waive the right to a jury trial on the tort claim; or (3) commence an action to terminate the marriage, forego the tort claim, and surrender the right to recover damages arising from spousal abuse. To enforce such an election would require an abused spouse to surrender both the constitutional right to a jury trial and valuable property rights to preserve his or her well-being. This the law will not do.

*Id.* 421 N.W.2d at 508 (adopting language of intermediate Wisconsin appellate court). Since a jury trial is not available in an Alabama divorce action, a divorcing spouse in Alabama would be in the same predicament. We do not believe that the Alabama courts would be any less protective of the right to a jury trial than the courts of Wisconsin.[3]

### B.

■ We now determine whether Abbott's tort claim was in fact disposed of in the divorce action.

Appellee Williams contends that the final divorce decree "resolved not only the question of incompatibility ... but also all other grounds which were plead[ed]." He argues first that Abbott's allegation of physical abuse in her divorce complaint made assault an issue in the divorce proceeding. In her divorce complaint, however, Abbott pled only incompatibility and irretrievable breakdown of the marriage as the grounds for divorce. Either incompatibility or irretrievable breakdown of the marriage is a sufficient ground for divorce under Alabama law. *See* Ala.Code § 30–2–1(a)(7), (9)

(1983). Abbott's allegation of physical abuse was pled in support of her request for a TRO and not as a ground for divorce. Furthermore, the settlement agreement, incorporated into the divorce decree at the request of both parties, stated only incompatibility as a ground for the divorce. Even if other grounds for divorce had been pled in the complaint, we could not infer that they were resolved—rather than abandoned or deferred for the sake of ending the marriage as rapidly as possible—in an agreement that makes no mention of them.

Williams also contends that Abbott made the alleged assault an issue by seeking in her divorce complaint a TRO, which she obtained and which was later incorporated into the divorce decree. Certainly, in requesting the TRO, she alleged past physical abuse in support of her request for injunctive relief from future abuse. The TRO, however, did not adjudicate either Williams' liability to Abbott for past abuse or the amount of damages to compensate for Abbott's injuries. The only issue before the court was whether there was such a likelihood of future abuse that a restraining order was necessary to protect the plaintiff. In deciding whether or not to grant the order, the court would, of course, have considered past conduct for the purpose of forecasting future conduct, but not in order to decide whether a particular assault had occurred. Abbott's tort claim and her request for equitable injunctive relief require consideration of different issues, *see Harrington*, 450 So.2d at 101–02, and we cannot conclude that the separate elements of the tort action for damages were raised and resolved by the settlement agreement simply because the agreement incorporated injunctive relief against future acts of violence.

Finally, we consider whether the terms of the separation agreement indicate the parties' resolution of Abbott's tort claim. In its memorandum opinion, the district court stated that "the terms of the one-sided property settlement indicate that it was the intention of the parties at the time of

---

**3.** Alabama provides a right to a jury trial of actions that were triable to a jury at common law. Ala. Const. art. I, § 11; *see City of Mobile*

*v. Gulf Dev. Co.,* 277 Ala. 431, 171 So.2d 247, 259 (1965). Wisconsin does the same. Wis. Const. art. I, § 5.

entering into the settlement agreement that the settlement would cover all claims accruing during the marriage." Thus, the court disposed of Abbott's claim as a pure question of law, looking only at the terms of the agreement and not considering the extrinsic evidence offered by Abbott to explain the parties' intent. *See Terry Cove North, Inc. v. Baldwin County Sewer Auth., Inc.*, 480 So.2d 1171, 1173 (Ala.1985) (ambiguity of an agreement is question of law for court to decide); *Stacey v. Saunders*, 437 So.2d 1230, 1233 (Ala.1983) (same; court construes unambiguous agreements as matter of law; extrinsic evidence considered only when agreement is ambiguous). Looking now at the same document, we cannot agree with the district court's conclusion that the agreement was unambiguous and clearly reflected the parties' intent to resolve all claims.

First, we note that the parties to the agreement did not state that they were resolving all claims, but only that they were entering an agreement with respect to their marriage, the division of property, and responsibility for debt. This distinguishes the case from *Jackson*, where the agreement provided expressly for full settlement of all claims, *see Jackson*, 460 So.2d at 1292.

Secondly, the settlement agreement provides no basis for determining that the payment of $21,000 to Abbott was one-sided: the total marital assets of the parties were not listed; the agreement recited an equitable division of personal property used or acquired during the marriage but did not specify what property was to go to each spouse or what the share of each spouse was worth. In any case, even if we were able to determine that the wife's share was considerably greater than the husband's, we could not infer on that basis alone that the excess was intended as compensation for the husband's tortious conduct toward the wife; there are many possible explanations for disproportionate distributions in marital property settlements, and since the document contains no explanation, we will not provide one by speculation. Nor can we infer merely from the agreement's recitation of "other good and valuable consideration to husband" that the "consideration" included the release of Abbott's tort claim or reflected the full resolution of the claim. Similarly, as noted above, we cannot infer from the incorporation of the TRO into the settlement agreement that Abbott intended to settle her tort claim in exchange for continuation of the TRO.

Thirdly, the settlement agreement makes no mention of fault. The parties state merely that they are completely incompatible and that the marriage is irretrievable; the agreement requests, and the divorce decree grants, dissolution of the marriage expressly and solely on these "no-fault" grounds, *see Phillips v. Phillips*, 49 Ala. App. 514, 274 So.2d 71, 77 (1973) ("Incompatibility of temperament is antagonistic to the concept of fault or wrongdoing as a ground for divorce."). The physical abuse alleged by Abbott in her divorce complaint as the ground for injunctive relief was mentioned in the agreement only indirectly (through incorporation of the TRO) and was not a ground for the divorce. This distinguishes the current case from *Smith*, where it was clear that the parties had negotiated extensively over the wife's injuries and the appropriate compensation for those injuries before reaching a comprehensive settlement, *see Smith*, 530 So.2d at 1391, and from *Weil*, where the husband's tortious conduct was asserted by the wife and considered by the court in support of the wife's claim for alimony, *see Weil*, 503 So.2d at 832.

For these reasons, we hold that the agreement was not unambiguous with respect to the parties' intent that all claims accruing during the marriage be covered in the agreement. Extrinsic evidence may thus be considered in determining the parties' intent—as objectively expressed by what they communicated to one another in the course of reaching their settlement agreement. Abbott's affidavits in opposition to the summary judgment motion reveal a genuine factual dispute over the parties' intent to resolve all claims, making summary judgment improper. Accordingly, we reverse the district court's holding

that the settlement agreement clearly indicated an intent to resolve all claims accruing during the parties' marriage and remand the case for further proceedings.

REVERSED and REMANDED.