**Regina Thomas WALTON, Plaintiff,**

v.

**COWIN EQUIPMENT COMPANY, INC., Defendant.**

**Civ. A. No. 89-AR-0263-S.**

United States District Court, N.D. Alabama, S.D.

April 3, 1990.

James Alan Mendelsohn, Gordon Silberman Wiggins & Childs, Birmingham, Ala., for plaintiff.

James P. Alexander and John W. Hargrove, Bradley Arant Rose & White, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

ACKER, District Judge.

This action was brought by Regina Thomas Walton against Cowin Equipment Company, Inc., Walton's employer, under both 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. §§ 2000e, *et seq.*). Walton, a black female and long-time Cowin employee, claimed that because of her race she received a rate of pay lower than white employees who performed substantially similar work. She also claimed that she had been retaliated against by Cowin in response to her having filed an EEOC charge.

At the time Walton filed her action, the federal court consensus was that she had a right to invoke 42 U.S.C. § 1981 and Title VII as dual methods for presenting her complaint of racial discrimination in private employment. Section 1981 clearly provided her a right to trial by jury, a right which she exercised. Walton's claim under § 1981 suddenly evaporated with *Patterson v. McLean Credit Union*, — U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), causing a mid-course correction. Cowin moved for and was granted partial summary judgment (based on *Patterson*), knocking out the § 1981 aspect. Cowin also moved to strike Walton's jury demand. The court followed the reasoning and the authorities it had relied upon in *Beesley v. The Hartford Fire Insurance Company*, 717 F.Supp. 781 (N.D.Ala.1989), reconsidered at 723 F.Supp. 635 (N.D.Ala.1989), and denied Cowin's motion.

Walton's Title VII claim was tried to a jury composed of one white male, one black male, four white females, and one black female. No objection was voiced by either party to the other party's preemptory strikes during the selection of these seven jurors. After hearing the evidence and the court's instructions,[1] the jury found that Cowin had discriminated against Walton by paying her less for work substantially similar to work performed by one or more white employees. The jury awarded damages in the amount of $14,622.40. The court directed a verdict in favor of Cowin on Walton's separate claim of retaliation, finding that Walton had not presented evidence of retaliation meeting the substantiality test of *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969).

The court now has for consideration Cowin's alternative motion for judgment notwithstanding the verdict or for a new trial. It asks this court to rethink and, after rethinking, to repudiate *Beesley*, in light of *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527 (11th Cir.1990), decided after *Beesley*. It is reasonable to request another reconsideration of *Beesley*. This court must do its best to reevaluate the jury trial issue by ascertaining the meaning of *Sherman*, which, incidentally, is now pending in the Eleventh Circuit on suggestion for rehearing *en banc*. This court must also consider the lessons, if any, in *Teamsters, Local No. 391 v. Terry*, — U.S. ——, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990); and in *Lytle v. Household Manufacturing, Inc.*, — U.S. ——, 110 S.Ct.

---

**1.** The court borrowed largely from the instructions in Equal Pay Act cases as contained in the newly published "Eleventh Circuit Pattern Jury Instructions in Civil Cases." The court, of course, substituted "race" for "sex" as the motivating factor for the claimed pay disparity.

1331, 108 L.Ed.2d 504 (1990), both decided by the Supreme Court after *Beesley* and after *Sherman*.

In another case now before this court involving a motion to strike a jury demand in a Title VII case, Cowin's counsel filed a brief which is consistent with the position they now take on behalf of Cowin. That brief contends that *Sherman* effectively wipes *Beesley* from the books.[2] In effect, Cowin's counsel argue that this court's opinions in *Beesley* have been vicariously reversed by *Sherman*.

The court finds interesting the fact that Cowin's counsel, appearing for another client in yet another case wherein they represent a *plaintiff* before this very court, have filed a brief in support of a request for a jury trial. Of all things, Cowin's counsel cites this court's *Beesley* opinions as authority for the right to a jury trial in a statutorily created cause of action where the statute itself is silent on the subject.[3] Admittedly that case is a trade-

2. Defendant's brief in *Tyrone Davis v. McRae's of Alabama, Inc.,* CV 89–AR–1921–S, pp. 2–3, argues:

> First, the United States Supreme Court has recognized that there is no right to a jury trial under Title VII. *See Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 375 [99 S.Ct. 2345, 2350, 60 L.Ed.2d 957] (1979) (noting that "[b]ecause [Title VII] expressly authorized only equitable remedies, the courts have consistently held that neither party has a right to a jury trial"); *see also Curtis v. Loether,* 415 U.S. 189, 197–98 [94 S.Ct. 1005, 1010, 39 L.Ed.2d 260] (1974). Furthermore, the Eleventh Circuit has stated:
> Since Title VII cases are entirely in equity there is no right to a jury trial, even when the claimant seeks back pay.
> *Wilson v. City of Aliceville,* 779 F.2d 631, 635 (11th Cir.1986); *Sullivan v. School Board of Pinellas County,* 773 F.2d 1182, 1187 (11th Cir.1985); *see also Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir.1969); *B. Schlei & P. Grossman, Employment Discrimination Law* 1135 (1983 and Supp. 1983–85). In fact, the Eleventh Circuit has held, as recently as January, 1990, that a Title VII plaintiff is not entitled to a jury trial. *See Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527, 1529 at n. 4 (11th Cir.1990). This is the law of the other federal circuits as well. *See, e.g., Shah v. Mount Zion Hospital & Medical Center,* 642 F.2d 268 (9th Cir.1981); *Grayson v. Wickes Corp.,* 607 F.2d 1194 (7th Cir. 1979); *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918 (10th Cir.1979).
> Cases holding that no right to a jury trial exists under Title VII rely primarily upon the fact that remedies available under Title VII, by statutory prescription, are equitable in nature. *See* 42 U.S.C. § 2000e–5(g); *see also Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527, 1529 at n. 4. Thus, since Title VII itself does not provide for a trial by jury, the courts consistently have held that actions brought pursuant to Title VII and its equitable remedial scheme are not subject to the Seventh Amendment's guarantee of a jury trial and thus should be tried to the bench. *See, e.g., Johnson v. Georgia Highway Express, Inc.,* 417 F.2d at 1125.

3. Plaintiff's brief in *Flowers Family Bakeries, Inc. v. Mills Family Bakery of Alabama, Inc.,* CV 89–AR–1854–S, pp. 1–3, argues:

> The right to a trial by jury in the federal court system is a basic and fundamental right, and a party's request for a jury trial should be granted in the absence of the opposing party's ability to overcome its high burden of proof. The Federal Rules of Civil Procedure ("FRCP") have demonstrated this strong public policy toward granting a party's request for a jury trial in FRCP Rule 38. Rule 38 provides that a party may have a trial by jury as a matter of right whenever such party demands a jury trial within ten days after service of the last pleading directed to an issue triable by jury. Additionally, Rule 39(b) provides that "the court in its discretion upon motion may order a trial by jury of any or all issues." FRCP Rule 39. Flowers Family Bakeries has moved this court to exercise its discretion and order a trial by jury in the above-styled action.
> In considering a request for a jury trial, the court generally "should grant a jury trial in the absence of a strong compelling reason to the contrary." *Swofford v. B & W, Inc.,* 336 F.2d 406, 408 (5th Cir.1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). The Eleventh Circuit has more recently reiterated this fundamental premise of civil procedure when, in *Parrott v. Wilson,* 707 F.2d 1262 (11th Cir.1983), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1984), the court stated that "[i]n this circuit, the general rule governing belated jury requests under Rule 39(b) is that the trial court 'should grant a jury trial on the absence of compelling reasons to the contrary.'" *Id.* at 1267 (citing *Swofford, supra* ); *see also, generally, Jordan v. Reliable Life Ins. Co.,* 716 F.Supp. 582, 583–85, n. 1 (N.D.Ala.1989) (Acker, J.).
> In reviewing a Rule 39(b) motion, the court may consider several balancing factors to aid its decision. Among these factors is included: (1) whether the case involves issues which are best tried to a jury; (2) the possible disruption to the court's schedule; (3) prejudice to the adverse party; (4) the length of delay before requesting a trial by jury; and (5) the reasons

mark infringement case, but the predominant relief there sought is equitable. There is, of course, nothing inherently wrong with ambidexterity in an advocate. The ability to argue both sides of a question, depending upon whose ox is being gored, is a lawyer's blessing. This court only mentions the same lawyers' differing opinions about *Beesley* as an illustration of the fact that the issue dealt with by this court twice in *Beesley* was apparently not entirely settled by *Sherman,* even before *Local 391* and *Lytle* were simultaneously decided by the Supreme Court on March 20, 1990.

Although there has been no ruling on application for rehearing in *Sherman,* this court will, for the purposes of this opinion, treat the opinion in *Sherman* rendered on January 10, 1990, as if it will survive that application intact. Because *Local 391* and *Lytle* were not decided until March 20, 1990, it was, of course, impossible for the Eleventh Circuit to consider them, and, of course, the Eleventh Circuit in *Sherman* was not being asked to review *Beesley.*

There are some striking parallels both in the facts and in the procedural postures among *Sherman, Lytle,* and the instant case. In all three cases the plaintiff was black and was complaining of employment discrimination based on race. In all three the plaintiff initially invoked both Title VII and § 1981. In all three the plaintiff demanded a jury trial. In all three *Patterson* had the potential for eliminating plaintiff's § 1981 claim, which would clearly carry the right to a jury trial. On these facts, the Supreme Court in *Lytle* parts ways with the Eleventh Circuit in *Sherman.* In *Sherman,* both the Title VII dispute and the § 1981 dispute had been simultaneously tried to a jury, pre-*Patterson.* The Eleventh Circuit pointed out that the trial court had "instructed the jury on the elements of a section 2000e–2(a)(1) claim and asked it to answer the following question: '(1). Was the race of the plaintiff ... or the fact of his marriage to Debbie Sherman [a white woman], a substantial motivating factor in any decision to terminate his employment ...?' " 891 F.2d at 1530 (brackets in original). Thereupon, the *Sherman* jury rendered plaintiff's verdicts of $10,000 in compensatory damages and $12,500 in punitive damages. The trial court then entered judgment against Sherman's employer in the jury-determined amount of $22,500. On motion for a new trial, the trial court in *Sherman* entered the following order:

Willie Lewis Sherman, the prevailing party in the above-captioned case, asks the Court to "clarify" the judgment entered in this case on February 29, 1988, following a two-day jury trial. The jury's findings of fact [i.e., its answer to question three], of course, related solely to plaintiff's causes of action [against Burke] under 42 U.S.C. § 1981. In view of the need to demonstrate a proper regard for the vital and necessary function of the jury in our judicial system, I am prepared to accept and adopt as my own these findings with respect to Sherman's

for any tardiness. *Parrott,* 707 F.2d at 1267. All of these factors dictate that a trial by jury is appropriate in this case.

First, while Flowers Family Bakeries does not deny that it has asked this court to enjoin the defendants from all future infringement upon its ownership of the trademark HOLSUM, it is equally important to note that this case involves the important issues of damages which Flowers Family Bakeries has already suffered due to the defendants' actions which have infringed upon Flowers Family Bakeries' trademark. The United States Supreme Court has held, since 1962, that mixed legal and equitable issues in a case do not prevent the plaintiff's request for a trial by jury. *Dairy Queen v. Wood,* 369 U.S. 469 [82 S.Ct. 894, 8 L.Ed.2d 44] (1962) [footnote omitted]. Indeed, "[a] party with a claim for money damages, as opposed solely to equitable relief, has a Constitutional right to trial by jury." *Mastercard International, Inc. v. Arbel Corp.,* No. 86 CV 6801 SWK (S.D.N.Y. Oct. 18, 1989) (1989 WL 125781) (citing *Dairy Queen, supra* ). *See also Beesley v. Hartford Fire Ins. Co.,* 723 F.Supp. 635, 638 (N.D.Ala.1989) (Acker, J.) ("This necessarily implies that the right to trial by jury shares that certain sanctity which permeated the entire Bill of Rights"); *Beesley v. Hartford Fire Ins. Co.,* 717 F.Supp. 781, 783 (N.D.Ala.1989) (Acker, J.) ("[T]he present Supreme Court's recognition of the overriding importance of the Seventh Amendment's absolute guarantee of trial by jury in all cases not historically considered equitable" has made the Seventh Amendment one of the most important Bill of Rights guarantees).

Title VII claim [under section 2000e–3(a)] as well and to award him no further relief than that provided for under the verdict. Judgment is hereby entered accordingly [in the sum of $22,500].

*Id.* at 1531 (brackets in original but footnote omitted).

On appeal to the Eleventh Circuit neither party complained about the trial court's perfunctory use of the jury's response to the question posed under § 1981 in deciding the § 2000e–3(a) claim, and neither party raised an objection to the trial court's failure to make specific findings of fact and written conclusions of law. A panel composed of Chief Judge Tjoflat, Judge Edmondson and Senior District Judge Atkins held, *sua sponte,* that *Patterson,* even though decided after the trial of Sherman's action, had succeeded in an *ab initio,* after-the-fact elimination of Sherman's claim insofar as based on § 1981:

> ... in accordance with the mandate in *Patterson,* we hold that Sherman has no cause of action under section 1981.

*Id.* at 1535.

Based on this finding, the Eleventh Circuit set aside the jury's punitive award, saying:

> Unlike section 1981, which allows for punitive as well as compensatory damages, *see Johnson v. Railway Express Agency,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975), Title VII limits a plaintiff to "equitable monetary relief" such as lost wages and work benefits, *see Walker v. Ford Motor Co.,* 684 F.2d 1355, 1364 & n. 16 (11th Cir.1982). We therefore hold that Sherman is not entitled to punitive damages for his Title VII retaliation claim and, accordingly, vacate the $12,500 award of punitive damages entered against Burke.

> \*    \*    \*    \*    \*    \*

> ... we affirm the award of $10,000 in *compensatory damages* under 42 U.S.C. § 2000e–3(a) (1982) but vacate the award

of $12,500 in punitive damages under section 2000e–3(a).

*Id.* at 1535–36 (emphasis supplied).[4]

The Eleventh Circuit's express description in *Sherman* of the $10,000 award as *"compensatory damages"* is significant not only because of the court's pointed choice of words but because the Eleventh Circuit allowed $10,000 in "compensatory damages" to stand even though it had clearly been fixed *by a jury* in a Title VII case. This is consistent with what the Eleventh Circuit said in *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041 (11th Cir.1989), mentioned by this court in *Beesley.* This court has found no decision which has ever even hinted, much less held, that "compensatory damages" is a form of "equitable relief." Unless Congress is empowered to make "black" into "white" by the simple device of renaming the two to suit some salutary purpose, a "legal remedy" cannot be converted into "equitable relief" by calling it "equitable." If Congress has this power, it can abrogate the Seventh Amendment by an easy-to-draft statutory declaration that all former "legal" actions shall henceforward be deemed "equitable." There might some day be a Congress which will want to do away entirely with jury trials in civil cases. For doing away with one of the Bill of Rights, if it can be done, a statute would be much easier than a constitutional amendment. It is possible, for instance, that some future Congress might become even more worried than the present Congress over the increasing cost of summoning and paying jurors and over the federal judicial system's failure to meet the public's demand for expedition in civil case management, and that such a Congress could manifest by statute its disagreement with *Armster v. United States Dist. Court,* 792 F.2d 1423 (9th Cir. 1986), which held that the Seventh Amendment absolutely prohibits the suspension of

**4.** This court is unsure if there is any lesson in *McGinnis v. Ingram Equipment Co., Inc.,* 888 F.2d 109 (11th Cir.1989), for the subject at hand. *McGinnis,* like *Sherman,* dealt with *Patterson,* but the panel opinion of November 14, 1989, in *McGinnis,* was vacated on February 6, 1990, and

*McGinnis* will now go to *en banc* rehearing. What the full Eleventh Circuit will say in *McGinnis,* if anything, on the continued viability of a § 1981 claim in the private employment context, post-*Patterson,* will come too late for use in this opinion.

the operation of the civil jury system for lack of funds.

There is still more to be deduced from *Sherman.* Chief Judge Tjoflat wrote a special concurrence reflecting his unhappiness with a central pronouncement in *Bailey v. USX Corp.,* 850 F.2d 1506 (11th Cir. 1988). *Bailey* was written by then Chief Judge Roney who told this very court that it was incorrect when it held that a *former* employee could not sue his *former* employer under Title VII for damages resulting from a post-termination act of retaliation by the *former* employer. In *Bailey* the plaintiff had sought what can only be described fairly as "legal" relief. He alleged that USX, his former employer, had deliberately "bad-mouthed" him to prospective employers, effectively preventing him from obtaining employment for a period of time after his termination by USX. *Bailey* could certainly not be described as a typical "back pay" Title VII case. In *Bailey* the only claim was for money, designed to compensate Bailey for the loss which he claimed had resulted from the blacklisting. In *Sherman* Chief Judge Tjoflat, although writing pre-*Lytle,* obviously understood very well that Bailey's claimed remedy was purely legal, but that former Chief Judge Roney, in an opinion binding upon Chief Judge Tjoflat, had found Bailey's remedy to be one *implied* by Title VII. Chief Judge Tjoflat knew that Bailey's claim, as described in *Bailey,* would have carried a jury trial if Bailey had invoked the Seventh Amendment. Chief Judge Tjoflat's concurrence in *Sherman* makes plain the quandary in which he found himself, and in which any judge would find himself if he believes that all Title VII remedies are by statutory definition "equitable" and therefore cannot be tried to a jury. Another problem, or perhaps an aspect of the same problem, is manifest in the $10,000 verdict and judgment, which the Eleventh Circuit affirmed in *Sherman.* According to the employer's brief in support of its current application for rehearing in *Sherman,* "both parties recognized that the amount of lost back wages was substantially less than $10,-000," a fact which means that the jury added something for mental anguish. This

is the only possible explanation for the nice round figure, $10,000. Despite these problems inherent in *Bailey,* problems fully comprehended by Chief Judge Tjoflat, the panel in *Sherman* expressed in *dictum* its belief that Title VII cases are not jury-triable. Because the issue was not raised in *Sherman,* either in the district court or in the Eleventh Circuit, the panel's expressions on the subject of jury trial were *dicta.* Repeating its earlier gratuitous belief in no jury trials in Title VII cases, the panel in *Sherman* said:

> Sherman, however, had no right to a jury trial of his section 2000e–2(a)(1) claim. The law provides that such a claim lies in equity, *see* 42 U.S.C. § 2000e–5(g) (1982) (limiting an employee's relief under Title VII to injunction against unlawful employment practices and reinstatement, back pay, or any other equitable relief as court deems appropriate). Thus, regarding Sherman's section 2000e–2(a)(1) claim, the jury could serve in an advisory capacity only. *See* Fed.R.Civ.P. 39(c). In sum, the jury's verdict bound the court on the section 1981 claim but not on the section 2000e–3(2) claim.

891 F.2d at 1529, n. 4.

Although this is *dictum,* it does accurately reflect prior Eleventh Circuit precedent. *See Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir.1969). The question for this court is not whether the panel in *Sherman* correctly recites Eleventh Circuit precedent, but whether this Eleventh Circuit precedent has been undercut by subsequent pronouncements of the Supreme Court in a way that releases this court to follow an ascertainable Supreme Court lead in a new direction.

The court apologizes to the world in general, and to the parties in *Beesley* in particular, for not having recognized or not having remembered the message implicit in *Bailey* before writing the *Beesley* opinions. Of all courts, this court should have seen what Chief Judge Tjoflat saw in *Bailey,* and should have articulated it in its *Beesley* opinions.

■ If and when the Eleventh Circuit next speaks on the subject of the right to a jury trial in a Title VII case, the Eleventh Circuit will not only have to face the dilemma which Chief Judge Tjoflat recognized was created by *Bailey*, but will have available the following statement by the Supreme Court in *Lytle:*

> Under Fourth Circuit precedent, a plaintiff does not have a right to a jury trial on a Title VII claim. *See Keller v. Prince George's County*, 827 F.2d 952, 955 (1987). *This Court has not ruled on the question whether a plaintiff seeking relief under Title VII has a right to a jury trial. See Chauffeurs, Teamsters and Helpers v. Terry*, 493 U.S. ——, ——, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519 (1990). Because Lytle does not argue that he was entitled to a jury trial on his Title VII claims, we express no opinion on that issue here. Instead, we assume for purposes of this opinion that he has no such right.

110 S.Ct. at 1335, n. 1 (emphasis supplied). The Supreme Court now makes it quite plain that Cowin's counsel misspoke when they categorically pronounced that the Supreme Court has "recognized that there is no right to a jury trial under Title VII." See footnote 2, *supra*. In *Lytle* the Supreme Court exhaustively discussed the same line of current Supreme Court cases which this court discussed in its two *Beesley* opinions, but which were not discussed in *Sherman*. *Lytle* holds, if it holds nothing else, that in a case involving both a § 1981 claim and a Title VII claim, a jury trial cannot be avoided by the expedient of first conducting a bench trial on the Title VII claim and then finding the non-jury result determinative of the same factual dispute in the § 1981 claim. This confirms what this court said in *Beesley* about *Patterson*. *See* 723 F.Supp. at 646. It is now clear that if a party has a right to jury trial on any issue involving a factual dispute, whether a federal claim or a pendent state

claim, the said issue must be decided by a jury if a jury is demanded. This is the mandate both of the Seventh Amendment and of *Lytle*. To reiterate, according to *Lytle* the party demanding a jury trial cannot be precluded by a prior non-jury determination of a jury issue.[5] The reasoning of the Supreme Court in *Lytle* is unassailable. It demonstrates, *inter alia*, that bifurcating pendent state claims or federal issues such as ADEA, Equal Pay Act, § 1981, and the like, from Title VII claims is futile, whether for the calculated purpose of avoiding a jury demand by a party who has invoked the Seventh Amendment, or in the mistaken belief that judicial economy will result. To the extent that *Sherman* may indicate a belief by the Eleventh Circuit that a trial court is not bound on a Title VII fact issue by a prior jury determination of that issue, even though the dispositive Title VII dispute has been properly presented to and decided by the jury, the Eleventh Circuit has been gainsaid by the Supreme Court in *Lytle*, where the Supreme Court, with utmost clarity, said:

> It would be anomalous to hold that a district court may not deprive a litigant of his right to a jury trial by resolving an equitable claim before a jury hears a legal claim raising common issues, but that a court may accomplish the same result by erroneously dismissing the legal claim. Such a holding would be particularly unfair here because Lytle *was required to join his legal and equitable claims to avoid the bar of res judicata.*

110 S.Ct. at 1336–37 (citation omitted) (emphasis supplied). Can the trial court that receives the remand in *Lytle* say: "What the Supreme Court giveth in *Lytle* it hath already taken away in *Patterson*, which maketh this whole proceeding into an academic exercise?" If *Lytle* is to have any meaning, it stands for the proposition that a pre-*Patterson* case containing a § 1981 aspect, combined with a Title VII aspect,

---

5. This may explain why the Supreme Court denied certiorari in *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1524, —— L.Ed.2d —— (1990), in which the Ninth Circuit held that the

Seventh Amendment requires a trial court to follow a jury's implicit or explicit factual determinations in deciding legal claims when an employee invokes both Title VII and § 1981.

requires a jury trial. This proposition fits Walton's pre-*Patterson* case like a glove.

While no one can predict with one hundred per cent certainty what the Supreme Court eventually will say on the subject of jury trials in Title VII cases, when it finally decides to do so, it is helpful to consider some expressions by the Supreme Court in *Local 391*, delivered on the same day *Lytle* was decided. As discussed in *Beesley*, it is still unknown whether or not *post-Patterson* cases with a Title VII claim are insulated from the Seventh Amendment's guaranty of a jury trial. There is room for deduction from these statements in *Local 391*:

Justice Marshall said for the Court:

An action for breach of a union's duty of fair representation was unknown in 18th-century England; in fact, collective-bargaining was unlawful. We must therefore look for an analogous cause of action that existed in the 18th century to determine whether the nature of this duty of fair representation suit is legal or equitable.

\* \* \* \* \* \*

... [T]he trust analogy does not persuade us to characterize respondents' claim as wholly equitable. The Union's argument mischaracterizes the nature of our comparison of the action before us to 18th-century forms of action. As we observed in *Ross v. Bernard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), *'The Seventh Amendment question depends on the nature of the ISSUE to be tried rather than the character of the overall action.'*

\* \* \* \* \* \*

In this case, *the only remedy sought is a request for compensatory damages representing backpay* and benefits. Generally, an action for money damages was 'the traditional form of relief offered in the courts of law.'

\* \* \* \* \* \*

The *backpay* sought by respondents is not money wrongfully held by the Union, but wages and benefits they would have received from McLean had the Union processed the employees' grievances

properly. Such relief is not restitutionary.

110 S.Ct. at 1345, 1347–48 (emphasis supplied and citations omitted).

The last quoted paragraph from Justice Marshall is highly reminiscent of what Chief Judge Roney said about Mr. Bailey's claim in *Bailey v. USX*. Justice Brennan concurred in *Local 391*, saying:

I would decide Seventh Amendment questions on the basis of the relief sought. If the relief is legal in nature, i.e., if it is the kind of relief that historically was available from courts of law, I would hold that the parties have a constitutional right to a trial by jury—unless Congress has permissibly delegated the particular dispute to a non-Article III decisionmaker and jury trials would frustrate Congress' purposes in enacting a particular statutory scheme.

(footnote omitted).

\* \* \* \* \* \*

... [I]t is too late in the day for this Court to profess that the Seventh Amendment preserves the right to jury trial only in cases that would have been heard in the British law courts of the 18th century.

\* \* \* \* \* \*

What Blackstone described as 'the glory of the English law' and 'the most transcendent privilege which any subject can enjoy,' 3 W. Blackstone, Commentaries \*379, was crucial in the eyes of those who founded this country. The encroachment on civil jury trial by colonial administrators was a 'deeply divisive issue in the years just preceding the outbreak of hostilities between the colonies and England,' and all thirteen States reinstituted the right after hostilities ensued. 'In fact, "[t]he right to trial by jury was probably the only one universally secured by the first American constitutions"'.... In *Parsons v. Bedford*, 3 Pet. 433, 446, 7 L.Ed. 732 (1830), Justice Story stressed: 'The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment

upon it has been watched with great jealousy.' Similarly, in *Jacob v. New York City*, 315 U.S. 752, 752–753, 62 S.Ct. 854, 854–855, 86 L.Ed. 1166 (1942), we said that '[t]he right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence ... [a] right so fundamental and sacred to the citizen [that it] should be jealously guarded by the court.'

110 S.Ct. at 1350, 1352–53.

Justice Stevens also concurred, saying:

> ... by definition, no recently recognized form of action—whether the product of express congressional enactment or of judicial interpretation—can have a precise analog in 17th or 18th century English law.
>
> \* \* \* \* \* \*
>
> As the Court correctly observed in *Curtis v. Loether*, 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974), 'in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law.' As I had occasion to remark at an earlier proceeding in the same case, the relevant historical question is not whether a suit was 'specifically recognized at common law,' but whether 'the nature of the substantive right asserted ... is analogous to common law rights' and whether the relief sought is 'typical of an action at law.'

110 S.Ct. at 1353–54 (citations omitted).

Dissenters, Justices Kennedy, O'Connor and Scalia, speaking through Justice Kennedy, dissented in *Local 391* only because they found the particular claim of breach of a duty of fair representation to be of the nature of a fiduciary or a trusteeship claim and thus historically closely akin to equitable relief. Therefore, their dissent cannot accurately predict their view on jury trial under Title VII in an action seeking monetary damages. Specifically, they say:

> If Congress has not provided for a jury trial, we are confined to the Seventh Amendment to determine whether one is required. Our own views respecting the wisdom of using a jury should be put aside. Like Justice Brennan, I admire the jury process.

110 S.Ct. at 1360 (emphasis supplied).

This does not sound as though Justices Kennedy, O'Connor and Scalia are going to dwell much on the ambiguous legislative history of Title VII when they face the issue. They are going straight to the constitutional and historical heart of the matter. When these dissenters refer to statutes which create federal causes of action but do not provide for a jury trial, they perfectly describe the Civil Rights Act of 1964. Will these three accept an argument which says that identical monetary relief, if obtained under § 1981, is "legal," but is "equitable" if obtained under Title VII? This court thinks not.

This court reads *Local 391* and *Lytle*, if not as a manifestation of agreement with the principle in *Bailey* that Title VII by necessary implication allows monetary relief outside the so-called "equitable" remedies enumerated in Title VII, certainly as a reinforcement of the Supreme Court's more recent and repeated recognitions of the reemergence of the Seventh Amendment as a force to be reckoned with. *See Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) and *Granfinanciera S.A. v. Nordberg*, 492 U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

■ As in *Lytle*, plaintiff in the instant case had her § 1981 rug suddenly jerked from under her after she had legitimately demanded a jury trial on issues which, pre-*Patterson*, would clearly have been jury triable, and in which the jury verdict would undoubtedly have controlled the Title VII outcome. Overlaying this fact, and magnifying the jury issue, her cause of action compares perfectly with an action brought by a female under the Equal Pay Act, the only difference being that Walton based her claim on race discrimination rather than on sex discrimination. Had she inserted the word "female" for the word "black," and had she invoked both the

Equal Pay Act and Title VII, she would have been entitled, without question, to trial by jury. To deny her a jury trial because she is black instead of being simply female, presents a Fifth Amendment "equal protection" question of significant proportion. How could Congress, much less a federal court, justify rationally the granting of a jury trial on a female's claim of pay disparity while denying a jury trial for pay disparity identical in all respects except that it is based on the employee's race? The Fifth Amendment here works very well in harmony and in tandem with the Seventh.

Before leaving *Local 391*, this court would like to congratulate the Sixth Circuit for its opinion in *United Transp. Union, Local 74 v. Consolidated Rail Corp.*, 881 F.2d 282 (6th Cir.1989), which reversed a district court's striking of a jury demand in a case involving a claim of breach of the duty of fair representation. The Sixth Circuit, pre-*Local 391*, whether by wise parallel reasonaing or by superior intuition, correctly anticipated the Supreme Court's holding in *Local 391*. This court has available to it more recent expressions on the subject of jury trial for statutory causes of action without any Congressional mandate than the Sixth Circuit had in *Local 74*, and more than the Eleventh Circuit had in *Sherman*. This court only hopes that with the tools it has it is as capable of predicting the Supreme Court as was the Sixth Circuit.

Although Walton does not attempt to distinguish her case from *Beesley* insofar as the jury trial issue is concerned, *Beesley* is distinguishable. In *Beesley* the plaintiff sought damages for alleged sexual harassment by her supervisor and invoked Title VII and § 1981 as her federal vehicles for obtaining damages from her employer. She did not claim a *constructive* discharge. She separately claimed for wrongful *actual* termination not necessarily connected to the harassment. The Seventh Circuit holds that Title VII does not permit an award even of *nominal* damages for sexual harassment unless that harassment results in discharge. *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180 (7th Cir.1986);

*Swanson v. Elmhurst Chrysler Plymouth, Inc.*, 882 F.2d 1235 (7th Cir.1989). In this holding the Seventh Circuit frankly acknowledges its disagreement with the First Circuit, the Fourth Circuit, the Fifth Circuit and the Eleventh Circuit. *T & S Associates v. Crenson*, 666 F.2d 722 (1st Cir.1981); *Katz v. Dole*, 709 F.2d 251 (4th Cir.1983); *Joshi v. Florida State University*, 646 F.2d 981 (5th Cir.1981); *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982). In fact, in *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900 (11th Cir.1988), the Eleventh Circuit further distanced itself from the Seventh Circuit by saying that a victim of sexual harassment "does not have to demonstrate a 'tangible loss' of an 'economic character'" in order to obtain at least nominal damages. The plaintiff in *Beesley* asked for more than nominal damages, perhaps because she disagreed with the Eleventh Circuit in *Dundee* and *Huddleston*, because of her reading of *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), and certainly because she realized that "nominal damages" arguably might be deemed an "equitable remedy," whereas "compensatory damages," especially if it includes compensation for mental anguish, would surely constitute a "legal remedy" and therefore would carry the jury trial she demanded. In the instant case Walton definitely could not have been limited by Title VII, as a matter of law, to "nominal damages" against Cowin on the evidence she presented.

The Eleventh Circuit has handed down two recent decisions worthy of comment in this case. The first is *Abbott v. Williams*, 888 F.2d 1550 (11th Cir.1989), written by Chief Judge Tjoflat. *Abbott* held that divorcing spouses in Alabama cannot be forced to litigate in an Alabama divorce court every legal dispute between them, because to establish such a requirement would contravene the Seventh Amendment's right to the jury trial of claims traditionally tried by jury. For years prior to *Abbott*, Alabama equity judges had assumed to the contrary, blissfully unaware of the overriding significance of the Sev-

enth Amendment. Although it did not do so, the Eleventh Circuit in *Abbott* might very well have cited *Granfinanciera* and the reawakened Supreme Court interest in the Seventh Amendment. Instead, it quoted approvingly a similar statement by the Supreme Court of Wisconsin:

> To enforce such an election would require an abused spouse to surrender both the constitutional right to a jury trial and valuable property rights to preserve his or her well-being. This the law will not do.

888 F.2d at 1554–1555, quoting *Stuart v. Stuart*, 143 Wis.2d 347, 421 N.W.2d 505, 508 (1988).

In *Abbott*, the trial court had assumed, as many courts apparently still assume, that if an important issue in a case is equitable, then the other issues are somehow subsumed or drawn into the "equity" maelstrom, and that the constitutional requirement for trying claims at law to a jury is somehow eliminated. *Abbott* makes just as clear as *Lytle* does that the Seventh Amendment stands in the way of this proposition. *Abbott* is the most recent acknowledgement by the Eleventh Circuit that the right to jury trial of traditional legal issues must be preserved at all cost. *Abbott* constitutes the Eleventh Circuit's very recent tacit agreement with *Tull, Granfinanciera, Lytle* and *Local 391*. It is difficult to reconcile *Abbott* with the *dicta* in *Sherman*.

The other recent Eleventh Circuit case deserving attention is *IMPACT v. Firestone*, 893 F.2d 1189 (11th Cir.1990). In *IMPACT*, the panel was split, but it is unnecessary for this court to take sides, because the actual disposition is not as significant as the dissenter's general observation. This court finds that these words by Judge Edmondson in his dissent strike home:

> The teaching of [*Texas Dept. of Community Affairs v.*] *Burdine* [450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)] and *Patterson*, and even more plainly of [*United States Postal Service Board of Governors v.*] *Aikens* [460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403

(1985)], is that employment discrimination trials are normal trials and that the lower federal courts have been wrong to view these trials as arcane proceedings governed by rigid mechanized formulae imposing special burdens and constraints on the parties. Reviewed as we normally review nonjury cases after a full trial, the trial judge's findings on racial discrimination here would be affirmed because they could not be described as clearly erroneous. Still we reverse. With today's decision, the court continues its resistance to the normalization of employment discrimination trials. I regret that the court is continuing in this direction. Further development of arcane rules of trial procedure does nothing to eradicate employment discrimination, but does make the trial court's job more difficult and does lead to more "errors" in trials with the result being greater expenditures of time, energy, and money on retrials.

893 F.2d at 1200–1201 (footnotes omitted). This prophetic criticism could not as easily be made of trials in which juries decide the disputes between parties, whether or not pursuant to the arcane formulae which juries are regularly called upon to handle in ADEA, Equal Pay Act, § 1981 and § 1983 cases. Either jurors are not so dumb that they cannot be trusted with complex matters, or the authors of the Seventh Amendment were naive.

From the *amici curiae* briefs filed in *Beesley* and from the arguments put forward by Cowin in this case, this court discerns a belief by at least a small segment of the litigating public that this court's behavior is aberrational in this instance and that never before during the entire history of Title VII has a Title VII case been tried to a jury. Although this court is not afraid of being alone, especially when it is predictably in the company of a future majority of the Supreme court, this court is surely not alone at the district court level. Other district courts have tried Title VII cases to juries, especially where there were overlapping pendent state claims and/or federal claims which

required trial by jury. Inadvertently predicting *Lytle,* here are a few examples of what other district courts earlier have said on the subject:

*Hodgin v. Jefferson,* 447 F.Supp. 804 (D.Md.1978).

. Defendants argue that plaintiff should not be allowed to try her case before a jury since her § 1985 and Equal Pay Act claims should be dismissed, leaving only her Title VII claim, which is equitable in nature. In the alternative, they contend that the § 1985 and Equal Pay Act issues are ancillary to the Title VII claim, and thus should be tried before the Court.

It is apparent that defendants' first argument is founded on the incorrect premise that the Court would dismiss all legal claims. Since the Court has retained a legal claim, the motion to strike plaintiff's jury election is inappropriate.

It is true that the great weight of case law illustrates that trial by jury is not required by Title VII. *See, e.g., Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir.1969); *Williams v. Travenol Laboratories Inc.,* 344 F.Supp. 163 (N.D.Miss.1972). While the argument in favor of denying a jury trial where the legal claims are "ancillary" to the Title VII count is somewhat persuasive, the cases have held otherwise. For example, in *Van Ermen v. Schmidt,* 374 F.Supp. 1070 (W.D.Wis.1974), Judge James Doyle stated:

Where equitable and legal actions are joined in the same action and a jury trial is demanded, only the most extraordinary circumstances can justify a denial of a jury trial on the legal claims. *Characterization of the legal claim as incidental to the equitable claim cannot justify striking the jury demand. Id.* at 1073.

477 F.Supp. at 809–10 (emphasis in original).

*Guyette v. Stauffer Chemcial Co.,* 518 F.Supp. 521 (D.N.J.1981).

Defendants argue that the remedies available under state law, particularly compensatory and punitive damages and the right to a jury trial, would circum-

vent and subvert the equitable and remedial purposes of Title VII. *See Gerlach v. Michigan Bell Telephone Co.,* [448 F.Supp. 1168], *supra* at 1173 [E.D.Mich. 1978]. Since the doctrine of pendent jurisdiction, however, unlike that of federal pre-emption, determines not the scope of the remedies available but only the forum in which the claims are tried, it would seem a matter of indifference to the federal court whether the state law remedies complement those available under federal law. If the federal court were to decline pendent jurisdiction, the state law claims would presumably be litigated in the state courts, and the effect of the state law remedies upon Title VII policies would be the same. As long as other considerations of fairness and convenience weigh in favor of pendent jurisdiction, therefore, there is no reason why a federal court should refuse pendent jurisdiction simply because state law provides remedies above and beyond those provided by Congress.

518 F.Supp. at 525.

*Selbst v. Touche Ross & Co.,* 587 F.Supp. 1015 (S.D.N.Y.1984).

Defendant's arguments for striking plaintiff's jury demand and her claim for damages are premised on dismissal of the state law claims. Assuming that only the federal claim were to remain, it argues that no right to trial by jury exists in cases arising under Title VII, and that punitive damages of the type alleged by plaintiff are not recoverable in a Title VII action. If we had dismissed plaintiff's state law claim, we would agree with defendant and grant the relief requested. However, having retained the state law claim, we find ourselves in the position of a state court judge in determining whether plaintiff is entitled to a jury trial and damages of the type requested. Neither party contests that under New York law plaintiff is so entitled. It may seem odd that Congress should preclude punitive damages and the right to a jury trial in Title VII cases, and then permit the recognition of such rights and claims in such actions through the device of pendent

jurisdiction. That is, however, an oddity for Congress to correct. Under New York law plaintiff is entitled to a jury trial and may be entitled to punitive damages. We accordingly deny defendant's motion to strike these requests.

587 F.Supp. at 1017.

Although the trial court's opinion in *Sherman* is unpublished, it is clear from the reviewing opinion by the Eleventh Circuit that the trial court had presided over the trial of overlapping Title VII and § 1981 claims at the same time, expressly charging the jury on the Title VII issues. As demonstrated from the above three Federal Supplement quotations, the district court in *Sherman* was in pretty good company.

Since writing *Beesley I* and *Beesley II*, this court has received enough letters and telephone calls to have no doubt, if it ever had any, that this court is not alone in believing that Title VII cases, where monetary damages are being sought, are triable to a jury on proper demand. The court takes judicial knowledge of the fact that more and more jury demands are being filed in Title VII cases, and more and more motions to strike them are being denied. The ultimate outcome on this issue will, of course, depend on the Supreme Court, which thus far has not spoken directly on the subject.

In one of three ways, this court could reduce, or could eliminate entirely, the possibility of having committed reversible error. First, the court could take Cowin's post-trial motion under advisement for a year, as some district courts do, in the hope that during the wait the question will be decided by the Supreme Court. Not only would this be contrary to this court's *modus operandi*, but it would add to the Congressional temptation to pass pending legislation designed to whip the overextended judiciary into line and to guarantee expeditious disposition of civil cases. *See* Senate Bill 2027. Second, the court could avoid the issue by an after-the-fact designation of this particular jury as "advisory" under Rule 39(c), F.R.Civ.P., and itself make findings of fact and state conclusions of law, with or without accepting the jury's "advice." Third, this court could take the position which the district court took in *Ochoa v. American Oil Company*, 338 F.Supp. 914 (S.D.Tex.1972). That court fully and eloquently aired its belief that the Seventh Amendment mandates a jury trial in Title VII cases. It made a better argument than this court could ever make, and then, in frustration, concluded:

> The foregoing constitutes the opinion of the Court. Unfortunately, it cannot form the ratio decidendi of the ruling. The precise question raised by the motion at bar was presented and decided in *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir.1969), where the Court of Appeals for this Circuit held that the right to trial by jury does not exist in a Title VII suit. Although this conclusion was stated in a single paragraph and in a manner so summary as to suggest that the Court had not been fully apprised of the serious constitutional implications of its decision, it is nonetheless the law of the Circuit and, as such, binds this Court. Accordingly, the cause shall be struck from the jury docket.

338 F.Supp. at 914 (footnote omitted).

This court recommends a thorough reading of *Ochoa*. After such a reading no serious legal scholar would question the integrity or the jurisprudence of the district judge who wrote *Ochoa*. However, in 1972 the judge in *Ochoa* did not have the ADEA, or *Tull*, or *Granfinanciera*, or *Patterson*, or *Local 391*, or *Lytle*, to look at. The judge in *Ochoa* did have and did cite James, *Right to a Jury Trial in Civil Actions*, 72 Yale L.J. 655 (1963), an article written by this court's law professor, a fact which is not as significant as the fact that this court thoroughly agrees with what Professor James said and the fact that Professor James' article is relied upon by Justice Brennan in his *Local 391* concurrence.

It is for these reasons that this court will neither retreat nor shirk on the Title VII jury trial issue, and will adhere to what it said in *Beesley*.

The court will deny Cowin's post-trial motion, finding that Cowin's arguments claiming alleged errors other than the error of granting the jury trial have been adequately dealt with in the previous opinion which granted in part and denied in part Cowin's motion for directed verdict. An appropriate, separate order will be entered.