In this case, the conservatorship estates suffered losses. Some of the losses were attributable to the actions of Floyd, the first conservator, in taking title to properties in his own name, and some of the losses were, apparently, attributable to the actions of Bryant, the second conservator, in not properly selling the properties. The majority, however, holds:
 "[W]e need not address Lawyers Surety's contention that Bryant breached his duties of trust in the process of selling the estates' respective one-half interests in the Cardinal Hills property and Wilters Street property, for Floyd's (and therefore Lawyers Surety's derivative) liability for losses from the two properties is absolute under the circumstances of this case."
The majority places the responsibility for all the losses on the surety for the first conservator because, it holds, that result is dictated by the "absolute liability" rule set out in § 205 of the Restatement (Second) of Trusts and applied in Barnes and Chancellor, supra. I must respectfully dissent.
Section 205 of the Restatement provides, in pertinent part, that "[i]f the trustee commits a breach of trust, he is chargeable with any loss or depreciation in value of the trust estate resulting from the breach of trust." (Emphasis added.) Comment f to § 205 states:
 "Loss not resulting from breach of trust. As is stated in Clause (a), a trustee is liable for a loss resulting from the breach *Page 833 
of trust. A question may arise, therefore, as to the causal connection between the breach of trust and the loss. If the trustee commits a breach of trust and if a loss is incurred, the trustee may not be chargeable with the amount of the loss if it would have occurred in the absence of a breach of trust.
 "Where a trustee has committed a breach of trust in failing to earmark a trust investment, he is not necessarily liable for a loss resulting from the making of the investment. He is not liable where the loss did not result from the failure to earmark, except in a situation where as a matter of policy an absolute liability is imposed upon the trustee in order to deter him from committing such a breach of trust."
(Emphasis added.) Comment f to § 205 recognizes the general rule that, in order to charge a trustee with a loss to the trust estate, there must be a causal connection between the trustee's conduct and the loss. See Estate ofStetson, 463 Pa. 64, 83, 345 A.2d 679, 690 (1975)("It is generally the rule that a trustee who breaches a fiduciary duty will not be surcharged for a loss sustained by the trust if there is no causal connection between the breach of duty and the loss").
Comment f goes on to discuss the "absolute liability" exception to the general rule that is sometimes imposed as a matter of public policy. Relying on Barnes andChancellor, supra, the majority applies the "absolute liability" exception to a situation it was not intended to cover. Barnes and Chancellor present the following question: Who should bear the loss resulting from the failure of a bank in which trust funds have been deposited? Those two cases provide the following answer: The trustee will bear the loss only if he has failed to earmark and segregate the trust funds. The theory of liability in Barnes andChancellor is that, as between the trustee and the bank, neither of which, in the strict sense, "caused" the loss, the trustee — who has a fiduciary duty to the estate — should bear the loss if he has breached that duty.
This case does not present the same facts as Barnes
and Chancellor, and it should not, therefore, be decided on the same theory as Barnes andChancellor. Here, there are two fiduciaries. Each had duties to the estate, and each, apparently, breached some of his duties. There is no reason in this case, as there was inBarnes and Chancellor, to assign all the losses to one fiduciary (and his surety) when the causal connection between the losses and the conduct of each
fiduciary can be determined.[7] Compare Constantine v.United States Fidelity Guar. Co., 545 So.2d 750
(Ala. 1989) (wherein the court held that a notary's surety is not liable for the notary's wrongful notarization of a mortgage if the mortgagor's own negligence caused the loss).
I would hold that the responsibility for the losses to the conservatorship estate should be determined based on the causal connection between those losses and the actions of each
conservator. Any other result could discourage surety companies from writing fiduciary bonds in Alabama.
[7] The current conservators' argument in their brief that "[the second conservator] ultimately must account for rental and other moneys received during his conservatorship, matters which will be addressed in his (and his surety's) accounting" recognizes that the losses are capable of being apportioned.